MOSELEY, DOING BUSINESS AS MOSELEY PLUMBING
& HEATING CO., *v.* ELECTRONIC & MISSILE
FACILITIES, INC., ET AL.

No. 401.   Argued April 16–17, 1963.—Decided June 17, 1963.

*George C. Grant* argued the cause for petitioner. With
him on the brief was *T. Baldwin Martin.*

*Newell Edenfield* argued the cause for respondents.
With him on the brief were *William H. Major* and *Lamar
W. Sizemore.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The primary issue in this case is whether a claim under the Miller Act, 40 U. S. C. §§ 270a–270d, as amended, based upon arbitration clauses in two subcontracts providing for arbitration of any dispute arising thereunder, is enforceable under the provisions of the United States Arbitration Act. 9 U. S. C. §§ 1, 2 and 3. The institution of this suit was directed toward the recovery of compensation alleged to be due under two subcontracts between the petitioner, a plumbing and heating contractor, and the respondent Electronic & Missile Facilities, Inc., who was the prime contractor under a contract with the United States Corps of Engineers, Savannah District, covering certain Nike Hercules missile installations at Robins Air Force Base Defense Area and Turner Air Force Base Defense Area, both of which are located in the State of Georgia. The subcontracts provided for arbitration in New York, and, disputes having arisen thereunder, the respondent filed suit in the Supreme Court of New York seeking an order directing arbitration in accordance with the arbitration provisions. Petitioner then filed this suit in the Middle District of Georgia, where the work under the subcontracts was performed, seeking (1) recovery of the amounts alleged to be due under the subcontracts; (2) rescission of the subcontracts—on grounds of fraud—and recovery on a *quantum meruit* basis; (3) in the alternative, failing in both of these claims, recovery of the reasonable value of the labor and materials furnished; and (4) an injunction enjoining the respondent from proceeding with its arbitration efforts in New York. Neither party sought to compel specific performance of the arbitration agreement. The District Court, holding (1) that the Miller Act gave petitioner the right to sue in the District Court where

the subcontracts were performed and (2) that the arbitration clause, if induced by fraud on the part of respondent, would be vitiated, made permanent its prior restraining order directed at the arbitration proceedings in New York. The Court of Appeals reversed, holding that petitioner must arbitrate in New York under New York law. 306 F. 2d 554. We granted certiorari. '371 U. S. 919. Petitioner attacks the subcontracts, as well as the arbitration agreement, as being fraudulent, and this issue, we conclude, must be first determined by the District Court. We therefore reverse the judgment and remand the case to the Court of Appeals with directions to remand to the District Court for further proceedings not inconsistent with this opinion.

## I.

We need not elaborate at length on the involved factual situation since it is detailed in the opinions of the Court of Appeals and the District Court. As we have said, petitioner filed suit in the United States District Court for the Middle District of Georgia, the district in which the subcontracts were performed, alleging breach of contract for refusal to pay and seeking recovery for work which had been performed and, alternatively, rescission of the subcontracts on grounds of fraud. The suit was brought under the provisions of the Miller Act, which provides in pertinent part:

> "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy . . . ." 40 U. S. C. §270b (b).

It further provides that parties included within the Act "shall have the right to sue . . . and to prosecute said action to final execution and judgment . . . ." *Id.*, at § 270b (a). Respondent moved to dismiss the suit or stay the same so that the New York arbitration suit might proceed under the terms of both subcontracts, each of which provided that "[a]ny controversy or claim arising out of or relating to" the subcontracts or their breach would be submitted to arbitration in New York City under New York law. In denying these motions the District Court held that the Arbitration Act did not apply here since any other holding would nullify the provisions of the Miller Act. It also concluded that the allegations of fraud, if sustained, would, under Georgia law, rescind the subcontracts, including the agreement for arbitration.

The Court of Appeals, with one judge dissenting, reversed on the theory that the Miller Act was not enacted for the benefit of plaintiffs in the selection of a forum, but rather for the convenience of the defendant, and that this is the type of dispute that is and should be subject to arbitration. As to the issue of fraud, it held that federal law controls in determining whether an allegation of fraud precludes arbitration of a dispute arising under the subcontracts and concluded that, in order to bar arbitration under federal law, the allegation of fraud must be specifically directed to the arbitration clause rather than to the entire contract. Thus, it reversed the District Court on both points.

## II.

At the outset we note, as we have indicated, that no request has been made here for the enforcement of the arbitration agreement included within the subcontracts. Indeed, the petitioner has attacked not only the subcontracts, but also the arbitration clauses contained therein,

as having been procured through fraud. With the pleadings in this posture, we are obliged to pass upon the priority in determination of that issue in the trial of the case. In essence, petitioner alleges that the subcontracts with him, as well as other subcontractors, were a fraudulent scheme to obtain a great amount of work and material from petitioner and the other subcontractors without making payment therefor and to "browbeat" petitioner and his fellow subcontractors into accepting much less than the value of their claims. One of the means used to effect such scheme was alleged to be the insertion in the subcontracts of an arbitration clause requiring arbitration of disputes in New York. Under either the Miller Act or the Arbitration Act, it seems clear that the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined. It appears necessary, therefore, that the District Court proceed first to trial of this issue. In considering the question of the sufficiency of the pleadings with reference to the allegation of fraud, we believe that, as alleged here, the issue goes to the arbitration clause itself, since it is contended that it was to be used to effect the fraudulent scheme. If this issue is determined favorably to the petitioner. there can be no arbitration under the subcontracts.

In view of our holding here, it is not necessary to reach the issues relating to arbitrability of disputes arising under these subcontracts. In fact, disposition of the fraud issue may dispose of the entire suit. In the event the fraud issue is decided favorably to the respondent, and the United States District Court for the Middle District of Georgia should be called upon to decide the question of arbitrability of such disputes and related problems in Miller Act cases, its decision on that point would then, of course, be subject to review.

We therefore reverse the judgment of the Court of Appeals and remand the case to it with instructions that it remand the same to the District Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART would affirm the judgment substantially for the reasons stated in Chief Judge Tuttle's opinion for the Court of Appeals. 306 F. 2d 554.

THE CHIEF JUSTICE and MR. JUSTICE BLACK, concurring.

We agree with the Court that fraud in the procurement of an arbitration contract, like fraud in the procurement of any contract, makes it void and unenforceable and that this question of fraud is a judicial one, which must be determined by a court. To allow this question to be decided by arbitrators would be to that extent to enforce the arbitration agreement even though steeped in the grossest kind of fraud. Compare *Robert Lawrence Co.* v. *Devonshire Fabrics,* 271 F. 2d 402 (C. A. 2d Cir. 1959). For this reason we acquiesce in the Court's present disposition of the case on this single issue. But we point out that this disposition leaves open questions of great importance to laborers and materialmen who under the Miller Act are entitled to have their controversies settled in independent courts of law:

(1) Can a member of the special class of laborers and materialmen which Congress, in the public interest, has protected by fixing the venue for their claims under the Miller Act in a particular federal court deprive himself of that kind of remedy as a condition of his obtaining the employment or the purchase of his materials?

(2) Can any person, before any dispute has arisen, agree to arbitrate all future disputes he may have and

thereby lose his right to go into court to try his claim according to due process of law?

(3) Can the Arbitration Act, in light of its language and legislative history, be applied to laborers and materialmen or to construction projects subject to the Miller Act?

(4) Is a construction project, like the one in this case, one "involving commerce" so as to come within the restricted scope of the Arbitration Act?