**CENTRAL CONTRACTING COMPANY,**
a corporation, and Housing Authority
of the City of Pittsburgh, to the Use
and Benefit of Central Contracting Company, a corporation, Plaintiff,

v.

**MARYLAND CASUALTY COMPANY,**
a corporation, Defendant.

**Civ. A. No. 64–776.**

United States District Court
W. D. Pennsylvania.

May 20, 1965.

Bresci R. P. Leonard, of Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., for plaintiff.

John A. Metz, Jr., of Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

This is a diversity (?)[1] action arising out of a contractual dispute between the plaintiff, as painting subcontractor, and C. E. Youngdahl & Company, Inc.—Crump, Incorporated—Psaty & Fuhrman, Inc. (a joint venture), the prime contractor, involving plaintiff's claim of $63,405.87 as compensation for certain painting "extras" and/or corrective work required of it in the construction of the North View Heights housing project here in Pittsburgh.[2] Defendant is a surety for the prime contractor and in that capacity furnished both a "Performance Bond" and a "Labor and Materialmen's Bond" to the project Owner (Housing Authority of the City of Pittsburgh). The complaint is drawn in two counts, the first count asserting third-party beneficiary rights under the "Performance Bond", and the second count asserting such rights under the "Labor and Materialmen's Bond". Defendant has moved to dismiss, contending that neither count states any claim upon which relief can be granted; that by reason of express provision in the pertinent subcontract, plaintiff has agreed to commence any suit against the prime contractor or its sureties (including defendant) only in the courts of the County of New York, State of New York; and that, by yet another provision in the said subcontract, plaintiff is obliged as a condition precedent to litigation to join with the prime contractor in arbitration of all disputes arising out of the agreement, excepting such interpretations of its obligations "as fall within the province of the Owner under the General Contract". Defendant has

---

1. The complaint does not aver the names of the states wherein the plaintiff and defendant have their respective principal places of business, and, accordingly, is defective. 28 U.S.C. § 1332(c); Wymard v. McCloskey & Co., 342 F.2d 495 (3d Cir. 1965); Dining Car Emp. Local No. 385 v. Chicago M. & St. P. & P. R. Co., 323 F.2d 224 (7th Cir. 1963); Buell v. Sears, Roebuck and Co., 321 F.2d 468 (10th Cir. 1963). Our disposition of the case, however, makes it unnecessary to determine whether the defect is curable.

2. It appears that plaintiff has fully performed its subcontract and has been paid $243,081.97 thereunder. Thus we are confronted with a situation whereby plaintiff's claim for $63,405.87 is derived from its contract with the joint venture, a contract wholly executed by plaintiff and executed in large part by the joint venture, and yet, as will be seen, plaintiff seeks to be selective in obtaining the enforcement of those contract provisions favorable to it, while decrying as unfair and unjust those provisions of the same contract which it deems objectionable.

also filed a motion to stay the within proceedings pending arbitration.[3]

We are of the opinion that the provision of the subcontract whereby plaintiff agreed to sue only in New York is valid and its existence a proper reason for this court to decline to exercise jurisdiction over the pending litigation. For that reason, defendant's motion to dismiss will be granted.

In National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), the Supreme Court upheld the validity of a printed form provision inserted in a farm equipment lease by the lessor, a corporation with its principal place of business in New York, whereby the lessees, Michigan farmers, agreed to designate a New York resident as their agent for the purpose of accepting service of process in the State of New York. The following is an excerpt from the majority opinion (at pp. 315–316, 84 S.Ct. at p. 414):

"The purpose underlying the contractual provision here at issue seems clear. *The clause was inserted by the petitioner and agreed to by the respondents in order to assure that any litigation under the lease should be conducted in the State of New York.* The contract specifically provided that 'This agreement shall be deemed to have been made in Nassau County, New York * * * and shall be interpreted, and the rights and liabilities of the parties here determined, in accordance with the laws of the State of New York.' *And it is settled * * * that parties to a contract may agree in advance to submit to the jurisdiction of a given court,* to permit notice to be served by the opposing party, or even to waive notice altogether.

See, e. g., Kenny Construction Co. v. Allen, 101 U.S.App.D.C. 334, 248 F.2d 656 (1957); Bowles v. J. J. Schmitt & Co., Inc., 170 F.2d 617 (C.A.2d Cir. 1948); Gilbert v. Burnstine, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453 (1931)." (Emphasis ours.)

Here, too, a contracting party has agreed in advance to submit to the jurisdiction of a given court. Paragraph 45 of the subcontract provides as follows:

"45. The rights of the parties shall be construed pursuant to the Laws of the State of New York. The Subcontractor agrees that it will not commence any action, whether in law or in equity, against the Contractor or its sureties on bonds, if any, because of any matter whatsoever arising out of the alleged breach or performance of this subcontract agreement, in any Courts other than those in the County of New York, State of New York, and the Subcontractor expressly waives any and all rights the said Subcontractor might have by reason of the aforesaid bond provisions, if any, or by reason of any other cause whatsoever, to bring said action in any other court. The rights herein given the Contractor shall also be deemed for the direct benefit of the aforesaid sureties, if any, with the same force and effect as if they were parties hereto."

The demise of Pennsylvania's policy of absolute hostility toward such contractual provisions was signalled by the Supreme Court of Pennsylvania in Nippon Ki-Ito Kaisha v. Ewing-Thomas Corporation, 313 Pa. 442, 170 A. 286, 93 A.L.R. 1067 (1934). In that case the Court enforced a contractual provision requiring a Penn-

---

3. Defendant chose to make its motion to stay proceedings in the form of an "Amendment of Motion to Dismiss to Include Motion to Stay Proceedings Pending Arbitration". We regard them as separate and entirely different types of motions. That they may have different consequences is graphically illustrated in

the case of McDonough Construction Co. of Florida v. Maryland Cas. Co. [the very same defendant present in the case sub judice], 215 F.Supp. 488 (D.P.R.1961), discussed in United States for the Use & Benefit of Commonwealth Coatings Corp. v. Continental Casualty Company, 214 F.Supp. 949 (D.P.R.1963).

sylvania corporation to arbitrate a dispute in New York, but the sweep of its language embraced equally a provision requiring a Pennsylvania corporation to *sue* only in New York.[4] So, too, the language of our Court of Appeals in Monte v. Southern Delaware County Authority, 335 F.2d 855 (3d Cir. 1964), at p. 857:

> "It is beyond question that the parties to a contract may agree to submit disputes over that contract to arbitration and may also agree upon a *particular tribunal* for reviewing the arbitration award. Indeed, as we have noted in another context, an agreement that an arbitration award shall itself be final and binding upon the parties *generally precludes judicial review.* Bower v. Eastern Airlines, Inc., 214 F.2d 623, 625 (C.A.3), cert. denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954)." (Emphasis ours.)

Within recent weeks, a suit by this selfsame plaintiff against the prime contractor in connection with the identical subcontract and controversy here at issue has prompted the Supreme Court of Pennsylvania to declare unequivocally that "a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." Central Contracting Company v. C. E. Youngdahl & Company, Inc. et al., 418 Pa. 122, 209 A.2d 810 (May 3, 1965).

Other authorities are in accord that, in the absence of a showing of unreasonablenss, the courts should give effect to an agreement limiting the choice of forums of the contracting parties. Wm. H. Muller & Co. v. Swedish American Line Ltd., 224 F.2d 806, 56 A.L.R.2d 295 (2d Cir. 1955), cert. denied 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793; Euzzino v. London & Edinburgh Insurance Company, 228 F.Supp. 431 (N.D.Ill. 1964). See also: Krenger v. Pennsylvania R. Co., 174 F.2d 556, 560–561 (2d Cir. 1949), cert. denied 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531 (concurring opinion of L. Hand, C. J.); Restatement, Conflict of Laws, § 617, comment a; Restatement, Contracts, § 558.

In the context of this relationship between two *business entities*, the requirement that one of them sue the other only at the forum of the latter's home office approximately 400 miles away scarcely appears an unconscionable or unreasonable contractual exaction. The same applies to suits against the latter's sureties. Plaintiff has failed to sustain its burden of proving the unreasonableness of the provision in question.

Plaintiff contends, however, that a provision of the "Labor and Materialmen's Bond" gives it a *right* to sue in Pennsylvania, the state wherein the general contract was performed. The pertinent clause reads as follows:

> "(a) ALL persons who have performed labor, rendered services or furnished materials or machinery, shall have a direct right of action against the principals and sureties

4. In 170 A. 286, at p. 290, the Court stated:

"As in New York [prior to the decision in Gilbert v. Burnstine, cited in the National Equipment Rental case, supra], so here, it was *at one time* held that: 'The general jurisdiction of the several courts of the Commonwealth is established by law, not only for the security of private rights, but, by securing these, for the promotion of the good order and peace of society. It is against public policy, therefore, that parties should, by the terms of a private agreement, in advance oust their jurisdiction.' Rea's Appeal, 13 Wkly. Notes Cas. 546. *But that reasoning, and hence the conclusion drawn from it, has no applicability at this time.*" (Emphasis ours.)

It will be noted that the Supreme Court of Pennsylvania also held in that case (170 A. 286, at p. 288) that it was its duty to determine the question there under consideration *regardless* of whether the New York courts would reciprocate by remitting litigation to a Pennsylvania tribunal under like circumstances.

on this bond, which right of action shall be asserted in proceedings instituted in the State in which such labor was performed, services rendered or materials furnished (or where labor has been performed, services rendered or materials furnished under said Contract in more than one State, then in any such State). Insofar as permitted by the laws of such State, such right of action shall be asserted in a proceeding instituted in the name of the Obligee to the use and benefit of the person instituting such action and any or all other persons having claims hereunder, and any other person having a claim hereunder shall have the right to be made a party to such proceeding (but not later than one year after the complete performance of said Contract and final settlement thereof) and to have such claim adjudicated in such action and judgment rendered thereon."

Clearly, though, the plaintiff contracted away this "right" in paragraph 45 of the subcontract[5] (quoted, supra), if indeed the purpose of such a clause was to confer a right upon "persons" in the position of the plaintiff, rather than to serve as a restriction upon them. See: Electronic & Missile Facilities, Inc. v. United States for Use of Maseley, 306 F.2d 554 (5th Cir. 1962), rev'd on another ground, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818; United States for Use and Benefit of Industrial Engineering & Metal Fabricators v. Eric Elevator Corporation, 214 F.Supp. 947 (D.Mass.1963).

■■■ Plaintiff's president has submitted affidavits averring, in substance, that he did not take adequate time to read the complex provisions of the subcontract when it was submitted to him for signature by representatives of the prime contractor, relying instead upon contemporaneous representations by those representatives that "there would be a high degree of co-operation, and that the contract form with all of its pages of fine print need not trouble plaintiff, that the contractor would apply it fairly and reasonably at all times." Such supine negligence as the failure of the chief officer of a business entity (or his delegate) to read the provisions of an important contract before signing the same can scarcely be the subject of protection either at law or in equity. Moreover, we find nothing unfair or unreasonable about the insistence of the prime contractor that the plaintiff corporation adhere to the explicit terms of its contract. Nor can such insistence be rationally interpreted as inconsistent with the aforesaid contemporaneous representations. If *any* significance could be attached to the platitudes allegedly relied upon by plaintiff's president in signing the subcontract, the situation would still be controlled by the parol

---

5. An examination of the bonds sued upon reveals that they were executed and delivered to the Owner on January 5, 1960, *prior* to the execution of the plaintiff's subcontract. We reject plaintiff's claim that the prime contractor (and therefore the defendant surety) lost its right to hold plaintiff to paragraph 45 or the arbitration clause by breaching its "duty" to negotiate per paragraph 33(b). That paragraph states that the plaintiff's claim to compensation for extra work "shall be determined by negotiation between the parties involved and, if the said parties cannot agree, the matter shall be determined by arbitration * * *." If construed literally, the mandate that the claim *"shall be determined* by negotiation" would foreclose resort to judicial and arbitration tribunals alike. Even if the prime contractor did refuse to negotiate plaintiff's claim on the ground that such negotiation would be a futile exercise, we do not believe that it thereby lost any of its rights under the contract. The law does not require persons to do useless things. The Pennsylvania Supreme Court quite aptly has said that paragraph 33(b) does not make negotiation a precondition to arbitration; that a "contrary conclusion would ascribe to the parties an irrational intention to prevent arbitration when they most need it, i. e., when they are at such odds that they cannot even negotiate about their differences." Central Contracting Company v. C. E. Youngdahl & Company, Inc. et al., supra.

evidence rule as stated in Caplan v. Saltzman, 407 Pa. 250, 180 A.2d 240, at p. 242 (1962):

> "Where the written contract covers or purports to cover the entire agreement of the parties, and there is no averment and proof that anything was *omitted* therefrom by fraud, accident, or mistake, all prior *and contemporaneous* negotiations, representations and verbal agreements are superseded by the written agreement, and parol evidence is inadmissible to alter or contradict or vary or add to or subtract from or modify or supersede the written contract \* \* \*." (Emphasis ours.)

The affidavits by plaintiff's president cannot be construed as alleging fraud, duress, or the type of accident or mistake which would prevent application of the Pennsylvania version of the parol evidence rule. See: 15 P.L.E., Evidence, §§ 303, 304, 305; 32A C.J.S. Evidence §§ 851, 978, 979, 981. Plaintiff has not, in any event, claimed the existence of any such fraud, duress, accident or mistake.

■ We hold that by virtue of § 45 of the subcontract between itself and the prime contractor, the plaintiff corporation has agreed to litigate against the defendant in the County of New York, State of New York. We, therefore, decline to exercise our jurisdiction and willl grant the motion to dismiss.

This determination makes it unnecessary to reach the other questions raised by the motion to dismiss, and renders moot the motion to stay proceedings. The various issues and sub-issues thus undetermined—whether either count states a claim upon which relief can be granted, whether the surety-defendant has standing to demand that the plaintiff first resort to arbitration,[6] whether the contract terms require or even perhaps prohibit arbitration of this dispute, etc.,

—these are all matters that will have to be determined in the courts of New York, according to the subcontract terms. Of course, it is always open to the plaintiff and the prime contractor to submit the underlying controversy to immediate arbitration and thus avoid the strife and economic attrition visited by extended litigation of highly complex legal issues.

An appropriate order will be entered, dismissing the complaint.

---

6. See: United States for Use and Benefit of Commonwealth Coatings Corp. v. Continental Casualty Company, 214 F.Supp. 949 (D.P.R.1963); Modern Brokerage Corporation v. Massachusetts Bonding and Ins. Co., 54 F.Supp. 939 (S.D.N.Y. 1944); 5 Am.Jur.2d, Arbitration and Award, § 22.