**G.D. SEARLE & CO., Plaintiff,**

v.

**METRIC CONSTRUCTORS, INC., Defendant.**

Civ. A. No. C83–1824.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 18, 1983.

John J. Dalton, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Robert D. Marshall, Griffin, Cochrane & Martshall, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is presently before this court on defendant's motion to stay proceedings pending arbitration. In response to this motion plaintiff has requested this court to enjoin arbitration until this court has ruled on defendant's motion. Jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated hereinafter defendant's motion is GRANTED; plaintiff's motion is DENIED.

### FACTS

In 1981 G.D. Searle & Co. (Searle), a Delaware Corp. entered into a contract with Metric Constructors, Inc. (Metric), a North Carolina corporation, under which Metric was to construct a bulk chemical manufacturing facility for Searle in Augusta, Georgia. The Construction Agreement was executed by Searle on October 12, 1981 and by Metric on October 22, 1981. Under this Agreement Searle was obligated to pay Metric a fixed "Contractor's Fee" in the amount of $350,000, "Fixed Overhead Costs" of $1,105,910 and "Contractor Reimbursable Costs." The sum of the "Fixed Overhead Costs" and the "Contractor Reimbursable Costs" was not to exceed $18,904,000, this sum being known as the "Guaranteed Maximum Cost." The Construction Agreement also contained an arbitration

provision at paragraph 13. This provision, essential to the issues before this court, provides as follows:

Any claim or controversy arising between the parties hereto in connection with this Agreement or with an alleged breach thereof which cannot be settled by mutual agreement of the parties shall be resolved by arbitration held in a location within Richmond County, in the state of Georgia in accordance with the Construction Industry rules of the American Arbitration Association. Contractor shall continue performance of the Work during the pendency of any arbitration proceedings hereunder, unless otherwise directed by Searle in writing.

By October, 1982 Searle had paid Metric a sum equal to the "Guaranteed Maximum Cost." Construction had not been completed at this point and Metric threatened to terminate the agreement and discontinue construction unless Searle agreed to increase the contract price. By letter agreement dated October 28, 1982 (the "October Agreement") the parties modified the original agreement. In the October Agreement Searle agreed to pay Metric an additional amount, in excess of the Guaranteed Maximum Cost, as a convenience to allow construction to continue. Searle reserved the right to recover this additional amount. In addition Metric agreed that Searle could hold back 15% of the said additional amounts. Finally, the October Agreement contained the following paragraph:

3. The parties will diligently process the change orders in the manner provided in the [Construction] Agreement and, upon completion of the Work, will submit to arbitration as provided in paragraph 13 of the [Construction] Agreement, *any remaining dispute as to whether sums paid hereunder or the Holdback were properly payable to Metric under the [Construction] Agreement* . . . (emphasis added).

In May, 1983, four months after the scheduled completion date, the working relationship between the two parties was terminated.

On August 12, 1983 Metric filed a petition for arbitration with the American Arbitration Association (AAA) demanding Atlanta as the hearing site and seeking the following:

[A]n adjustment to the Guaranteed Maximum Price of its contract with Respondent, for additional and changed work, delays, interferences, disruptions and suspensions of its work, and increased and extended overhead costs associated therewith. Entitlement to such adjustment arises out of changes in the plans and specifications made by the Respondent or its agents, as well as delays and suspensions of the work by Respondent, and acceleration of the pace of work ordered by Respondent.

Metric demanded in relief:

An equitable adjustment of the contract Guaranteed Maximum Price of approximately $9.7 million, and payment of the balance of the unreimbursed cost and fees allowable under the contract.

Subsequent to Metric's petition, Searle filed an action in Fulton County Superior Court alleging breach of contract and requesting a declaratory judgment on certain issues, primarily the question of whether, and to what extent, an arbitration agreement exists. (*G.D. Searle & Co. v. Metric Constructors, Inc.,* Civil Action File No. D–2494). Defendant removed this action to Federal Court on August 29, 1983 due to diversity jurisdiction and an amount in controversy exceeding $10,000. Defendant subsequently filed a counterclaim and two motions, one for an order compelling arbitration and one for a stay of the proceedings pending arbitration. These two motions were brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. Pursuant to 9 U.S.C. § 4 Searle demanded a jury trial.

On September 15, 1983 defendant withdrew its motion to compel arbitration and informed the court that the AAA was proceeding with the administration of the arbitration and that since Searle was not seeking to enjoin the arbitration there was no need to compel Searle to submit. Metric

specifically stated that it was not withdrawing the motion to stay the litigation pending arbitration.[1] Because the case is now proceeding to arbitration Searle has brought a motion requesting this court to enjoin arbitration until such time as this court rules on defendant's motion to stay proceedings.

Further facts will be disclosed as necessary for the discussion of these motions.

DISCUSSION

1. *Defendant's Motion to Stay Pending Arbitration*

The key statutory provisions relevant to defendant's motion are §§ 2 and 3 of the United States Arbitration Act of 1925 (9 U.S.C. §§ 2 and 3). Section 2 provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once the court is satisfied both that the issue is arbitrable under the agreement and that the applicant for stay is not in default in proceeding with such arbitration.

■ The stay provisions of § 3, invoked here by defendant Metric apply only to the two specified types of contracts, namely those in admiralty or those evidencing transactions in "commerce."[2] *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The first question, then, is whether the construction contract between Searle and Metric is such a contract.

■ The contract in question involves Metric, a North Carolina corporation, and Searle, a Delaware corporation with its principal place of business in Illinois. The basis for the contract was the construction of a project in Georgia; the engineering design work and specifications were performed by PEDC, an Ohio general partnership. The Federal Arbitration Act has routinely been applied to construction cases and specifically to cases very similar to this one. In *Burke County Public Schools Bd. of Educ. v. Shaver Partnership,* 303 N.C. 408, 279 S.E.2d 816 (1981) the North Carolina Supreme Court held that the commerce requirement was met where the contract for construction of school buildings in Indiana involved a multi-state architectural firm and a Michigan structural engineer. The fact that the construction is to be performed entirely in one state has not defeated application of the federal statute. *See Monte v. Southern Delaware County Auth.,* 321 F.2d 870 (3d Cir.1963); *Electronic & Missile Facilities, Inc. v. United States,* 306 F.2d 554 (5th Cir.1962), rev'd on other grounds, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963). It has consistently been noted that federal policy favors arbitration and that the statute should be broadly applied. For these reasons this court holds that the contract in question meets the commerce requirement.

■ Having resolved that the contract is within the coverage of the Arbitration Act we now turn to the central issue in the case: whether the issues pending in federal court are properly arbitrable under the contract. There is no doubt but that the issue of arbitrability is a question for the court, to be determined by the contract entered into by the parties. *Drake Bakeries v. Bakery Workers,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). The real question in this case is which contractual provision regarding arbitration controls.

■ Plaintiff contends that the October, 1982 letter "clarified and limited" the arbi-

---

1. Metric also stated that Searle's demand for jury trial is now moot. Searle's demand for jury trial was with respect to the alleged issues under defendant's motion to compel arbitration, pursuant to 9 U.S.C. § 4. Defendants have withdrawn their motion and this Court agrees with defendant that plaintiff's demand for jury trial is, therefore, moot.

2. The meaning of "commerce" is set forth in § 1 of the Act.

trable issues. According to plaintiff, the parties did not intend the October arbitration provision to be merely an addendum to the original Construction Agreement. Instead plaintiff contends that the result of the October Agreement is that only two issues are now arbitrable: whether Metric is due the additional amount it received and whether Metric is due the remaining 15% Holdback. If these are the only arbitrable issues then this court cannot stay the proceedings because defendant has certainly raised issues beyond these two. Defendant's petition for arbitration seeks an adjustment of the Guaranteed Maximum price. In order to determine the validity of defendant's requests an arbitrator will have to consider defendant's allegation of

> additional and changed work, delays, interferences, disruptions and suspensions of · its work, and increased and extended overhead costs associated therewith ... [due to] changes in the plans and specifications made by ... [Searle] ... as well as delays and suspensions of work by ... [Searle] ... and acceleration of the pace of work ordered by ... [Searle].

This court assumes that the issues plaintiff has raised in its breach of contract claim are likewise nonarbitrable under plaintiff's theory.

Defendant, on the other hand, believes that all issues raised are subject to arbitration. It is defendant's contention that the October Agreement in no way limited the arbitrable issues and that the parties are bound, pursuant to the original arbitration provision, to submit all disputes to arbitration.

Clearly, under the original arbitration provision (see supra p. 2) all issues raised by the parties are arbitrable. The real question, then, is whether the original general arbitration provision was superceded by the October Agreement. For the following reasons this court holds that it was not.

In determining the effect of the October Agreement this court notes that federal policy recognizes a strong presumption in favor of arbitration. The United States Supreme Court has recently emphasized

this policy: "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

As defendant points out, the October Agreement was "very specific in both its terms and its purpose" (Defendant's Reply to Plaintiff's Response, filing date Sept. 23, 1983). The parties entered into this agreement to enable Metric to complete the project. The agreement dealt exclusively with this interim payment and the then-pending change orders. These items were not part of the original Construction Agreement and it therefore seems very sensible to this court to include an *additional* arbitration provision. This court sees no reason to find that the October Agreement, submitting the parties' latest agreement to arbitration, is in any manner inconsistent with the original arbitration provision. The October writing does not give any indication whatsoever of any intent to supercede the original contract. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("absent an express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" Id. at 585, 80 S.Ct. at 1354). We decline to alter the original contract where the subsequent writing can be construed in harmony with the original. See *Hauben v. Harmon,* 605 F.2d 920 (5th Cir.1979).

Having determined that the issues presented are all subject to the general arbitration provision contained in the original contract, we now address the second question under § 3 of the Act: is Metric in default so as to preclude the granting of a stay?

Plaintiff contends that Metric has defaulted upon a material term of the arbitration provision. According to Searle this default occurred when Metric demanded ar-

bitration in Atlanta; the arbitration clause specified Augusta as the hearing site.

 Again, federal policy favors arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of *waiver, delay, or a like defense to arbitrability."* *Moses H. Cone,* 103 S.Ct. at 941–42 (emphasis added).

The standard example of a default precluding a stay is a delay by the moving party in demanding arbitration. When the parties are well into the lawsuit before the intention to arbitrate is communicated such action is considered a default because of the prejudice to the non-moving party. *Barber & Ross Co. v. Cornell & Co., Inc.,* 242 F.Supp. 825 (1965).

This court believes that the prejudice to the nonmoving party is the key. "The determinative fact in considering whether or not there has been a default constituting waiver is the prejudicial effect of the moving party's conduct on the non-moving party." *In re Hart Ski Mfg. Co. Inc.,* 18 B.R. 154, 160 (Bkrtcy.1982).

Plaintiff in the instant case has shown no prejudicial effect of defendant's demand for Atlanta as the hearing site. Plaintiff is correct in asserting that the contract specifies Augusta and certainly plaintiff may hold defendant to this contract provision. Defendant readily admits that plaintiff may properly demand a transfer. (Defendant's Reply to Plaintiff's Response, filing date Sept. 23, 1983). This court sees no prejudice to plaintiff which should preclude a stay of proceedings.

For the reasons herein stated defendant's motion for a stay of proceedings pending arbitration is GRANTED.

### 2. *Plaintiff's Motion For Injunction*

As set out in the facts, plaintiff requests this court to enjoin arbitration until such time as the court rules on defendant's motion for stay. This court considered the two motions (defendant's and plaintiff's) simultaneously. Having granted defendant's motion to stay, there is no reason to entertain plaintiff's motion for injunctive relief.

For this reason plaintiff's motion is DENIED.

In summary, this court:

(1) GRANTS defendant's motion for a stay of proceedings pending arbitration; and

(2) DENIES plaintiff's motion for an injunction.

So ORDERED this 18 day of October, 1983.