**J. David TUFTS, III, Estate of James D. Tufts, II, Albert B. Crutcher and Linda Tufts Hebbler, Plaintiffs,**

v.

**The CORPORATION OF LLOYD'S a/k/a The Council of Lloyd's and the Committee of Lloyd's d/b/a/ Lloyd's of London, Defendants.**

No. 95 CIV. 3480(JFK).

United States District Court,
S.D. New York.

Sept. 18, 1996.

Levi & Lubarsky, New York, NY, for Plaintiffs; Steven B. Feigenbaum, Laura Gilbert, of counsel.

LeBoeuf, Lamb, Greene & MacRae, L.L.P., New York, NY, for Defendants; Taylor R. Briggs, Sheila H. Marshall, Mary L.B. Betts, Stephen H. Orel, of counsel.

### AMENDED OPINION and ORDER

KEENAN, District Judge:

Before the Court is the motion of defendants The Corporation of Lloyd's a/k/a The Council of Lloyd's and the Committee of Lloyd's d/b/a Lloyd's of London (collectively referred to herein as "Lloyd's") to dismiss the complaint in this action pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiffs oppose the motion. For the reasons that follow, Defendants' motion to dismiss is granted.

## BACKGROUND

### I. *Roby* Procedural History

Plaintiffs filed this independent action under Fed.R.Civ.P. 60(b) seeking relief from the judgment in *Roby v. The Corporation of Lloyd's*, 824 F.Supp. 336 (S.D.N.Y.1992) (Lasker, J.), *aff'd* 996 F.2d 1353 (2d Cir.), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993) on the ground of newly discovered evidence. In *Roby*, Plaintiffs here, together with more than one hundred other American investors at Lloyd's, charged Lloyd's and various of its related entities with violating the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corruptions Act. The *Roby* plaintiffs alleged that Lloyd's solicited their investments in securities without adequately disclosing the risks of those investments.

By Opinion and Order dated August 25, 1992, United States District Judge Morris E. Lasker dismissed the *Roby* plaintiffs' action on the grounds that forum selection and choice of law clauses (the "choice clauses") in Lloyd's' standard contracts with its investors required the *Roby* plaintiffs to bring their claims against Lloyd's in the courts of England and to be bound by English law. *Roby*, 824 F.Supp. 336. Judge Lasker's decision was affirmed by the Second Circuit Court of Appeals, and the United States Supreme Court denied certiorari to hear plaintiffs' appeal. The Court assumes familiarity with the content of these published decisions.

### II. Plaintiffs' Relationship to Lloyd's

Plaintiffs in the instant action, a small subset of the *Roby* plaintiffs, are investors or "Names" in Lloyd's' syndicates. The syndicates underwrite Lloyd's' insurance risk. Lloyd's itself has been described as "a market somewhat analogous to the New York Stock Exchange ... [that] promulgate[s] regulations and enforce[s] compliance therewith." *Roby*, 996 F.2d at 1357. The detailed operation of Lloyd's was described fully in Judge Lasker's and the Second Circuit's decisions in *Roby*.

Upon becoming members in Lloyd's, Names are placed in syndicates, through which they receive a percentage of the premiums paid to the syndicate by the insured in exchange for their assuming a specified percentage of the total risk of the policies. Names have unlimited personal liability for their respective shares of the syndicate's risk, but do not assume any of the liability of fellow Names. In other words, a Name's liability in a syndicate is several, not joint.

To become a Name, each investor is required to enter into a one-and-a-half-page agreement with Lloyd's' governing bodies referred to as the "General Undertaking." In 1986, Lloyd's revised the General Undertaking to include the choice clauses. The forum selection clause designates the courts of England as the "exclusive jurisdiction to settle any dispute and/or controversy if whatsoever nature arising out of or relating to" a Name's membership. The choice of law clause provides for the application of English law to any claims made against Lloyd's.

### III. The Louisiana Action

Plaintiffs all became Lloyd's Names between January 1983 and January 1985. In 1986, each of them executed the revised General Undertaking containing the choice clauses. In June 1992, as Plaintiffs' investment losses in their Lloyd's syndicates mounted, Plaintiffs joined the already ongoing *Roby* action.

In July 1992, while Lloyd's' motion to dismiss *Roby* was still pending before Judge Lasker, Plaintiffs commenced a second action in Louisiana state court to enjoin Whitney National Bank of New Orleans, the issuer of letters of credit securing Plaintiffs' investments at Lloyd's, and National Westminster Bank, PLC, an English confirming bank, from drawing on Plaintiffs' letters of credit. Before a preliminary injunction hearing could be held, Lloyd's intervened and removed the action to the United States District Court for the Eastern District of Louisiana.

In response to Lloyd's' intervention petition, Plaintiffs asserted counterclaims which included securities law claims. Because *Roby* was still pending, the parties in the Louisiana action reached a standstill agreement on July 19, 1994 (the "Standstill Agreement") pursuant to which Lloyd's agreed not

to draw on the letters of credit pending the resolution of its motion to dismiss in *Roby*. After the Second Circuit upheld the dismissal of the plaintiffs' claims in *Roby*, Lloyd's moved to dismiss Plaintiffs' claims against it in the Louisiana action on the ground of *res judicata*. United States District Judge Ginger Berrigan ruled in a March 31, 1995 order that a critical issue on Lloyd's' motion— whether the choice clauses should be upheld in light of Plaintiffs' claim of newly discovered evidence of fraud in the procurement of those clauses—was in fact a collateral attack on the *Roby* judgment that should be raised in the Southern District of New York. Judge Berrigan accordingly stayed the action before her pending the filing and resolution of the instant action. *See Tufts v. Whitney National Bank of New Orleans*, No. 92–2645 (E.D.La. Mar.31, 1995). Plaintiffs thereafter filed the complaint in this action.

## IV. Plaintiffs' Alleged Newly Discovered Evidence

As the basis for this action, Plaintiffs allege that they recently discovered new evidence, unavailable to them during *Roby*, showing that Lloyd's fraudulently procured the choice clauses enforced in *Roby*. The heart of Plaintiffs' complaint is that since the end of the *Roby* proceedings, new evidence has emerged from whistle-blowers at Lloyd's showing that Lloyd's' recruiting drive for new Names in the early 1980's "was in fact a massive, concerted fraud, of which the forum selection and choice-of-law clauses were an integral part." (Compl. ¶ 8). According to Plaintiffs, Lloyd's was facing asbestos-related claims and other "long-tail" liabilities that the Lloyd's syndicates would be unable to meet but for the recruitment of new Names in order to raise additional capital. Plaintiffs allege that Lloyd's, realizing that its recruitment of investors without disclosure of the potential future liability was in violation of United States securities law, revised the General Undertaking to require all resulting lawsuits to be brought in England under English law. Plaintiffs maintained in *Roby*, and maintain here, that the choice clauses operated as a waiver of American Names' already existing state and federal securities laws claims since English choice of law rules

preclude recognition of foreign tort laws. Plaintiffs also claim that the English forum provided Lloyd's the additional protection of the Lloyd's Act 1982, under which Lloyd's cannot be sued for any acts other than those taken in "bad faith."

In support of their theory that Lloyd's knew but failed to disclose the potential massive liability from asbestosis claims, Plaintiffs describe in the complaint the following pieces of alleged newly discovered evidence: (1) *the Selikoff Report:* a report written in 1964 by Dr. Irving Selikoff of Mount Sinai Hospital in New York (and described in the Report of 1983 Underwriting Year of Syndicate 421, prepared by a special committee appointed by the Council of Lloyd's to examine that syndicate's losses) of a study linking the development of asbestosis, mesothelioma and lung cancer in asbestos workers to the inhalation of asbestos particles, (Compl. ¶ 50); (2) *the LeBoeuf Letter:* a January 12, 1982 telex to Lloyd's from its counsel, LeBoeuf, Lamb, Leiby & MacRae, "confirm[ing] that Lloyd's' exposure was enormous, citing ... an unreleased study by the United States Department of Labor that concluded ... that by the late 1980's there would be 20,000 asbestos-related deaths annually in the United States," (Compl. ¶ 53); (3) *the November 1981 Minutes:* minutes of a meeting of Lloyd's' Panel Auditors on November 10, 1981 "acknowledg[ing] the magnitude of the asbestos problem" and noting that R.J. Kiln, then Chair of Lloyd's' Audit Committee, had " 'pointed out that he did not wish to see mention of these specific [asbestos-related] claims in [Lloyd's'] Audit Instructions,' " (Compl. ¶ 55); (4) *the Neville Russell Letter:* a February 24, 1982 letter from the English accounting firm of Neville Russell to Kenneth E. Randall, then manager of Lloyd's' Audit Department, seeking instructions from Lloyd's on how to deal with the potential asbestos liability in the upcoming syndicate solvency reports and noting that "most syndicates had insufficient reserves to cover potential losses, and that their exposure overall was considerably greater than Lloyd's had believed," (Compl. ¶ 56); (5) *the Lawrence Letter:* a March 18, 1992 letter from Murray Lawrence of Lloyd's to Lloyd's' Managing

Agents and active underwriters urging the agents to address the asbestos problem with the Names, (Compl.¶ 58); and (6) *Parliamentary Testimony:* "recent sworn testimony" by a Lloyd's official before Parliament's Treasury Select Committee allegedly showing that Lloyd's had believed in 1982 that it might jeopardize passage of the Lloyd's Act "if it were to report extensive losses, some of which would fall on members of Parliament," (Compl.¶ 59); and (7) *Mitchell Letter:* a December 19, 1989 letter from Stephen Mitchell & Co., solicitor to Lloyd's' Asbestos Working Party, to John Donner of managing agent Donner Underwriting Agencies Ltd. stating, in essence, that "the future has had to pay for" decisions by syndicates "to 'massage' the reinsurance to close [rather than to] admit to large losses and, in some cases, to go out of business." (Compl.¶ 69).[1]

Based on this evidence, Plaintiffs assert two causes of action. The first claim is for relief from the judgment of the district court in *Roby* under Fed.R.Civ.P. 60(b). The second cause of action is for a declaratory judgment that the Standstill Agreement remains in effect.

### DISCUSSION

Defendants move to dismiss the first cause of action in the complaint on the ground that Plaintiffs fail to satisfy the strictures of clauses (b)(2) and (b)(6) of Federal Rule of Civil Procedure 60 in seeking to reopen *Roby*.[2] The Court examines, in turn, whether the complaint states a claim under clauses (b)(2) and (b)(6). The Court also addresses the viability of the second cause of action in view of the disposition of the first cause of action.

1. The Court has also considered other evidence supplied by Plaintiffs in opposition to the motion, although such evidence should have been included in the complaint itself.

2. Rule 60(b) provides in relevant part as follows: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule

### I. Motion to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 60(b)(2)

Defendants assert two grounds for dismissing that portion of Plaintiffs' complaint seeking relief from the decision in *Roby* under Rule 60(b)(2). First, Defendants argue that Plaintiffs do not properly invoke Rule 60(b)(2) as a basis for relief from the decision in *Roby* to enforce the choice clauses since Plaintiffs' alleged newly discovered evidence fails to demonstrate that Lloyd's procured Plaintiffs' agreement to the choice clauses by fraud. Second, Defendants contend that Plaintiffs' alleged new evidence is not actually "new" because all of it was available to Plaintiffs before the district court's decision in *Roby*. As the Court finds Defendants' first argument dispositive, it does not reach the second contention.

#### A. *Legal Standards*

Rule 60(b)(2) permits a Court, in its discretion, to relieve a party from a final judgment or order based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). This section applies to newly discovered evidence showing fraud or mistake in the order or judgment from which relief is sought. *See Madonna v. United States,* 878 F.2d 62, 64 (2d Cir.1989).

Rule 60(b) mandates that a motion to reopen an action based on new evidence be made within one year. However, there is no fixed time frame for "independent actions" under Rule 60(b) such as the one brought here. Nevertheless, "since Rule 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of

59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment.
Fed.R.Civ.P. 60(b).

demonstrating 'exceptional circumstances'." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994) (quoting *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986)); *see also Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990) ("Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances."), *aff'd,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). A motion under Fed. R.Civ.P. 60(b) is not to be used merely to relitigate the basis of a prior order. *See Nemaizer,* 793 F.2d at 61.

■ A party seeking relief under Rule 60(b)(2) " 'must demonstrate that (1) newly discovered evidence is of facts existing at the time of [the prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative ... of evidence already offered.' " *Mancuso v. Consolidated Edison Co. of New York, Inc.,* 905 F.Supp. 1251, 1264 (S.D.N.Y.1995) (quoting *Weissmann v. Freeman,* 120 F.R.D. 474, 476 (S.D.N.Y.1988)).

Although an action brought under Rule 60(b)(2) must be proven by clear and convincing evidence, to withstand a motion to dismiss, the nonmoving party is merely required to "allege facts which, when assumed to be true, would amount to fraud on the court." *Madonna,* 878 F.2d at 64–65. As with all motions to dismiss, the Court must accept the complaint's factual allegations as true and draw reasonable inferences in Plaintiffs' favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

### B. *Analysis*

■ Even accepting the facts Plaintiffs allege as true and drawing the inferences that may reasonably be drawn from them in Plaintiffs' favor, the Complaint does not state a claim under Rule 60(b)(2) for relief from the decision in *Roby.*

■ The Court starts with the basic premise that a forum selection clause is presumptively valid and enforceable unless tainted "by fraud, undue influence, or overweening bargaining power." *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). In order to invalidate a forum selection clause on the basis of fraud, Plaintiffs must demonstrate specifically that the *"inclusion of that clause in the contract* was the product of fraud or coercion." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). *See also Roby,* 996 F.2d at 1363 ("forum selection and choice of law clauses are unreasonable' ... if· their incorporation into the agreement was the result of fraud or overreaching") (citing *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)); *AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148, 158 n. 16 (2d Cir. 1984).

In determining whether Plaintiffs' allegations of fraud provide grounds to void the forum selection clause, the Court must consider those allegations that are specific to that clause. *See Rush v. Oppenheimer & Co.,* 681 F.Supp. 1045, 1049 (S.D.N.Y.1988) (construing *Moseley v. Electronic & Missile Facilities,* 374 U.S. 167, 171, 83 S.Ct. 1815, 1817–18, 10 L.Ed.2d 818 (1963)).[3] As with all claims of fraud, Plaintiffs' claims must be pleaded with particularity under Fed. R.Civ.P. 9(b). *See Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 960 (10th Cir.) (involving claim against Lloyd's by Name alleging fraud with respect to choice clauses), *cert. denied,* 506 U.S. 1021, 113

---

**3.** Although *Rush* and *Moseley* involved arbitration clauses rather than forum-selection clauses, the Supreme Court has stated that an arbitration clause is merely "a specialized forum-selection clause." *Scherk,* 417 U.S. at 519, 94 S.Ct. at 2457.

S.Ct. 658, 121 L.Ed.2d 584 (1992). In addition, because the sole basis for this suit under Rule 60(b) is "newly discovered evidence," that evidence must bear directly on Plaintiffs' claim that Lloyd's fraudulently procured the choice clauses.

The Court finds that Plaintiffs' "newly discovered" evidence fails to support their claim that the choice clauses were included in the General Undertaking intentionally to defraud Plaintiffs and other Names. As another federal district court noted in a nearly identical case brought by Names involving almost every piece of evidence proffered by Plaintiffs here, although Plaintiffs' evidence "attest[s] to the fact that certain persons or entities of Lloyd's ... were aware of the massive liabilities facing Names participating in overexposed, undercapitalized, and underinsured syndicates," it does not "support[ ] the contention that the forum-selection clause was an intended part of a scheme to defraud." *Richards v. Lloyd's of London,* No. 94–1211–IEG 1995 WL 465687, at *10 n. 20 (S.D.Cal. May 1, 1995). The complaint's fatal deficiency is its lack of evidence demonstrating a link between Lloyd's' knowledge relating to asbestosis claims and other long-tail liabilities and its intentional use of the choice clauses to preclude Plaintiffs from bringing valid securities law claims against Lloyd's. *Accord Haynsworth v. Lloyd's of London,* 933 F.Supp. 1315, 1321–22 (S.D.Tex.1996) (finding that plaintiffs failed to show that choice clauses "were a product of fraud"); *West v. Lloyd's,* Case No. BC 111 313, Transcript at 132 (Cal.Super.Ct. May 19, 1995) (rejecting, in oral decision, Names' claims of fraud and misrepresentation with respect to forum selection clause).

Plaintiffs also fail to provide evidence that Lloyd's made affirmative misrepresentations to them with respect to the choice clauses. Plaintiffs merely *allege* that although the choice clauses "were the only material change from the prior General Undertaking, ... few if any Names, and certainly not the Tufts, were ever told of or otherwise able to realize [their] effect." (Compl.¶ 8). Plaintiffs also allege that R.W. Sturge & Co.

("Sturge"), the Tufts' Member's Agent, made various representations to them in 1986 that they "had to sign" the revised General Undertaking and that it was for Names' "benefit." [4] (Compl.¶ 77). These allegations are insufficient to satisfy Plaintiffs' burden under Rule 60(b)(2) of producing newly discovered evidence to support that the choice clauses were fraudulently obtained by Lloyd's.

First and foremost, there is nothing "newly discovered" since *Roby* about the circumstances under which Plaintiffs signed the General Undertaking in 1986. *See Ryan v. United States Lines Co.,* 303 F.2d 430, 434 (2d Cir.1962) ("newly discovered evidence" relates to evidence in existence at the time of the earlier disposition but not discovered until after the entry of judgment). Second, the choice clauses were hardly buried in the General Undertaking, which was a simple, one-and-a-half-page form, and therefore could—and should—have been examined carefully by Plaintiffs, especially given the unlimited personal liability they assumed with the investments. *Accord Bonny v. Society of Lloyd's,* 3 F.3d 156, 160 n. 10 (7th Cir.1993) ("Nothing excuses the plaintiffs for not being aware of the substantive provisions of English law that the forum selection clause incorporates into their agreement."), *cert. denied,* 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994); *West,* Tr. at 132 (finding nothing "would justify failure to read this one-and-a-half-page document which in itself is quite simple"); *see also Castro v. Marine Midland Bank,* 695 F.Supp. 1548, 1551 (S.D.N.Y.1988) (rejecting claim that arbitration clause was induced by fraud where plaintiff failed to identify any misrepresentations respecting the existence or effect of clause). Third, Lloyd's was not in a fiduciary relationship with Plaintiffs and had no duty to explain the effect of the choice clauses to them. *See Richards,* 1995 WL 465687, at *6 (finding Lloyd's "owed plaintiffs no fiduciary duty ... [and] had no affirmative duty to disclose to the Names all potential ramifications of the choice clauses"). Finally, even assuming the truth of the alleged remarks of the Tufts' Members' Agent, such statements cannot

---

**4.** The Complaint explains that "[e]ach Name is required to join Lloyd's through a Member's Agent, who processes the Name's investment applications." (Compl.¶ 22).

fairly be considered representations of *Lloyd's;* the Members' Agents are, if anything, representatives of the Names. *See Roby,* 996 F.2d at 1357 ("By agreement, the Members' Agents stand in a fiduciary relationship to their Names.").

Although Plaintiffs rely heavily on the decision of the Texas federal district court in *Leslie v. Lloyd's of London,* No. H–90–1907, 1995 WL 661090 (S.D.Tex. Aug.20, 1995), the Court finds that *Leslie* does not require a different result than the one reached here. In ·*Leslie,* the district court declined, *inter alia,* to enforce the choice clauses against plaintiff Leslie, finding that "Leslie's accession to the forum selection clause was the product of fraud on the part of Lloyd's and Sturge." *Id.* at \*21. In reaching this conclusion, the Leslie court relied on Texas law that is not applicable to this case. First, in contrast to this Court, the Leslie court found under Texas law that "Lloyd's and Sturge both had a duty to disclose material facts to Leslie, either by agreement or due to a special relationship." *Id.* Second, the court found that although "Leslie's reliance on Lloyd's representations was not reasonable ... [since even a] cursory reading of the 1986 General Undertaking would have revealed that it contained the [choice] clauses," Texas law did not require reasonable reliance. *Id.* at \*22. Given the *Leslie* court's reliance on inapposite Texas law in reaching its decision, the Court does not feel compelled to follow *Leslie.*[5]

In sum, the Court finds that Plaintiffs' "newly discovered evidence" fails to support that Lloyd's fraudulently procured the choice clauses. Plaintiffs therefore fail to state a claim under Rule 60(b)(2) for relief from the *Roby* judgment.

## II. Motion to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 60(b)(6)

Plaintiffs also assert that Rule 60(b)(6) provides a basis for relief from *Roby.* Rule

60(b)(6) permits a federal court to relieve a party from a final judgment or order for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). To properly invoke this clause, the asserted grounds for relief must be other than those recognized in clauses (1) through (5) of the Rule and there must be a showing of "extraordinary circumstances justifying relief." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (Rule 60(b)(6) applies only to relief "not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)"); *Nemaizer,* 793 F.2d at 63.

The relief Plaintiffs seeks in this action is clearly premised on the alleged newly discovered evidence and, as such, falls squarely within Rule 60(b)(2). Plaintiffs therefore cannot also avail themselves of Rule 60(b)(6). The Court therefore finds that because neither 60(b)(2) nor 60(b)(6) provides a basis for an independent action under Rule 60(b), the first cause of action in the complaint must be dismissed.

## III. Plaintiffs' Second Cause of Action

Plaintiffs' second cause of action is for a declaratory judgment that the Standstill Agreement, pursuant to which Lloyd's agreed not to draw on Plaintiffs' letters of credit until the resolution of *Roby,* remains in effect. The Court finds that, given the dismissal of the first cause of action, subject matter jurisdiction does not exist as to the second claim under 28 U.S.C. § 2201 because the latter is not based upon an "actual controversy within [the Court's] jurisdiction." The Court therefore dismisses Plaintiffs' second claim for a declaratory judgment.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss is granted. The Court orders this case closed and directs the Clerk

---

5. Nor, apparently, did the *Leslie* court feel compelled to follow the Second Circuit's decision in *Roby.* With respect to the issue of whether the General Undertaking operates as a waiver of United States securities laws, the court in *Leslie*

stated, "this Court would argue that *Riley, Roby, Bonny,* and *Shell* [v. *R.W. Sturge, Ltd.,* 850 F.Supp. 620 (S.D.Ohio 1993), *aff'd,* 55 F.3d 1227 (6th Cir.1995) ] are wrongly reasoned."

 

of Court to remove it from the Court's active docket.

**SO ORDERED.**