2015 IL App (1st) 142215

FIRST DIVISION
August 31, 2015

No. 1-14-2215

| | | |
|---|---|---|
| DOUGLAS COE, JACQUELINE COE, GFLIRB, LLC, ALAKE, LLC, and DBICHA, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 12 L 13691 |
| BDO SEIDMAN, L.L.P., and MICHAEL WHITACRE, | ) ) ) | Honorable |
| | ) | John B. Griffin, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, Douglas Coe, Jacqueline Coe, GFLIRB, LLC, ALAKE, LLC, and DBICHA, LLC, appeal the orders of the circuit court granting defendants BDO Seidman, L.L.P. (BDO), and Michael Whitacre's motion to stay the action pending arbitration and defendants' motion for a protective order limiting discovery pursuant to the arbitration clause.   On appeal, plaintiffs contend that the arbitration provision is unenforceable as part of BDO's conspiracy to commit fraud.   Plaintiffs also contend that the trial court erred in granting the stay pending arbitration because their claims arise from defendant BDO's investment and legal advice, and such claims are expressly excluded from arbitration by the contracts signed by the parties.   Plaintiffs' final

contention is that the arbitration provisions are unconscionable. For the following reasons, we affirm.

¶ 2                                    JURISDICTION

¶ 3    The trial court granted defendant's motion to stay the proceedings pending arbitration on June 20, 2014. Plaintiffs filed their notice of appeal on July 18, 2014. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307, allowing appeals of interlocutory orders as of right. Ill. S. Ct. R. 307 (eff. Feb. 26, 2010).

¶ 4                                    BACKGROUND

¶ 5    The following are the facts pertinent to the resolution of this appeal. In 2001, plaintiff Douglas Coe was the president and majority shareholder of a private company which he sold and received, after cashing in his stock ownership, a substantial sum. He sought the services of BDO, which advised him to use its distressed debt strategy on his tax returns to offset ordinary income and/or capital gain. Coe and his wife, Jacqueline, established GFLIRB, LLC, DBICHA, LLC, and ALAKE, LLC, as part of the distressed debt strategy. In connection with the implementation of this strategy, plaintiffs and BDO entered into a consulting agreement on August 4, 2001. [1]

¶ 6    Portions of the consulting agreement relevant to this appeal are as follows:

"2. Services

    (a) During the Term, BDO agrees to provide the following consulting services to the client (the "Services"): consulting services in conjunction with the sale of equity interest(s) in certain entities, including assistance in determining the

_____

[1] Although plaintiffs' claims arise from actions allegedly occurring from 2001 through 2007, the record shows only a signed consulting agreement for the period of August 4, 2001 to April 30. 2002, and a tax services agreement for the tax period of December 5, 2001 through December 31, 2001. However, the parties on appeal do not dispute that the 2001 consulting agreement applies to all of the claims raised in plaintiffs' complaint.

overall effects of potential sales price(s) and allocations thereof, assisting the Client and/or the Client's advisors in structuring the Transaction(s) to attain the most beneficial tax results, and assisting with certain income tax, estate tax, personal financial planning and other financial aspects of various anticipated investment activities. **BDO is not in the business of providing investment or legal advice or related services, thus, none of the services to be rendered by BDO to Client can or will include investment or legal advice and should not be considered as investment or legal advice. Client acknowledges and represents that it will, and is, not relying upon BDO for investment or legal advice or related services.**

(b) BDO will provide the Client with an opinion concerning the federal income tax consequences of the Transactions. The opinion will be in addition to and not in lieu of the opinion the Client will receive from legal counsel.

\* \* \*

5. <u>Indemnification</u> The Client, at its own expense, shall release and indemnify, defend and hold BDO and its affiliates, along with their respective partners, employees, agents, designees, insurers and assignees, harmless from and against, all losses, claims, damages, liabilities, costs and expenses \*\*\* incurred, caused by or arising out of the performance of the Services by BDO for the Client \*\*\*. This indemnity excludes a final adjudication that BDO engaged in gross negligence or willful misconduct in performing the Services which gave rise to the loss, claim, damage, liability, cost or expense sought to be recovered. \*\*\*

6. <u>No Warranty</u> **BDO makes no warranties, express or implied, under this**

**Agreement with respect to the Services or otherwise.** *** As stated above, the Services to be provided in connection with this Agreement include the issuance of an opinion regarding the federal income tax consequences of the Transactions.   In this regard, BDO accepts responsibility for the opinion BDO will provide to Client.   BDO does not assume any responsibility whatsoever, and shall not be held liable for, any legal and/or tax opinions regarding any strategies that may be implemented by Client during the term of this Agreement.   Client acknowledges and agrees that BDO has advised the Client to retain a law firm for legal as well as tax opinions on any strategies or Transactions in which Client engages during the term of the Agreement.   The Client's exclusive remedy, and BDO's sole liability to the Client, for any cause whatsoever related in any way to this Agreement or to the Services provided by BDO to Client, shall be limited to the dollar amount of the Consulting Fees actually paid to BDO by the Client under this Agreement. ***

* * *

8. Dispute Resolution

* * *

(d) If any dispute, controversy or claim arises in connection with the performance or breach of the agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the

arbitration panel, and shall take place in the city in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale. (e) Such arbitration shall be conducted before a panel of three (3) persons, one (1) chosen by each party and the third selected by the two (2) party-selected arbitrators. \*\*\*

\* \* \*

11. <u>Governing Law</u> This Agreement shall be governed and construed in accordance with the laws of the State of New York, except for its conflict of law principles."

12. <u>Entire Agreement</u> This Agreement \*\*\* sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations or understandings, whether oral or written, with respect to such subject matter."

(Emphasis in the original).

The tax services agreement Coe signed on behalf of GFLIRB, LLC, on April 9, 2002, contains the same arbitration clause as is found in the consulting agreement above.

¶ 7       BDO issued the opinion letter referenced in the consulting agreement on April 15, 2002. It states that Coe requested "opinions regarding certain federal income tax consequences of the investment transactions ("Transactions")."   BDO further stated that it believed "it is more likely than not that our opinions set forth herein would be upheld by a court if they were challenged by the Service, properly framed and presented for argument, and fully litigated on the merits."

¶ 8       In accordance with the consulting agreement, Coe claimed deductions on his tax returns in tax years 2001 through 2007.   The Internal Revenue Service (IRS) subsequently audited his tax returns from those years and disallowed the strategy as an illegal and abusive tax shelter.

Coe settled with the IRS for "substantial back-taxes, penalties, and interest." Plaintiffs filed the original complaint against defendants on December 6, 2012, and filed an amended complaint on November 21, 2013. The complaint alleged that BDO conspired to design, market, sell, and implement investment strategies it knew the IRS would disallow. It further alleged that BDO made these representations to convince the Coes to enter into the consulting agreement and participate in BDO's distressed debt strategy. Relying on BDO's misrepresentations, the Coes executed the agreement and implemented the investment strategies. Plaintiffs requested as damages the amount of the IRS settlement plus $805,000 in fees the Coes paid to BDO pursuant to the consulting agreement.

¶ 9     The complaint also sought a declaration that "any arbitration agreement provision contained in any of the Agreements is also null and void for the reasons set forth herein, including but not limited to the arbitration provision was procured by fraud, was fraudulently induced, and/or the fraud permeated the entire agreement, including the arbitration provision." In his affidavit, Douglas Coe stated that the parties discussed the arbitration provisions and that BDO represented these provisions "as *bona fide* dispute resolution procedures that would benefit all parties." BDO indicated that the provisions "offer a legitimate, good faith alternative to resolve disputes between the parties," and further stated that since the parties "were unlikely to have any disputes," the arbitration provisions were unlikely to be invoked. Coe stated that he "accepted their representations as to the purpose and effect of the arbitration provisions" when he agreed to those provisions.

¶ 10     On March 25, 2014, BDO filed a motion to stay the action in favor of arbitration pursuant to section 3 of the Federal Arbitration Act (Arbitration Act) (9 U.S.C. § 1, *et seq.*). In response, plaintiffs sought discovery on the issue of whether plaintiffs were fraudulently induced to enter

into the arbitration provisions of the agreements. BDO objected and moved for a protective order. BDO also filed a motion to dismiss which the trial court denied. The trial court, however, granted BDO's motion for a protective order which precluded plaintiffs from discovering materials other than publicly available resources. Plaintiffs filed a partial motion for summary judgment, seeking a declaration that their claims against BDO are not subject to the arbitration clause in the agreements. On June 20, 2014, after a hearing and argument, the trial court granted BDO's motion to stay the proceedings pending arbitration, and denied plaintiffs' motion for partial summary judgment. Plaintiffs filed this timely appeal.

¶ 11                                    ANALYSIS

¶ 12     On appeal, plaintiffs argue that the trial court erred in granting the motion to stay pending arbitration. The trial court's order is appealable as an interlocutory order pursuant to Rule 307(a)(1). The issue in such an appeal is "whether a sufficient showing was made to sustain the order of the trial court." *Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463 (2003). Therefore, in an interlocutory appeal, this court generally reviews the trial court's determination under the abuse of discretion standard. *Fuqua v. SVOX AG*, 2014 IL App. (1st) 131429, ¶ 15. However, if the question presented is purely one of law, a reviewing court will apply the *de novo* standard. *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996); *Bovay v. Sears, Roebuck and Company*, 2013 IL App (1st) 120789, ¶ 24. An agreement to arbitrate is a matter of contract, and the interpretation of a contract is a question of law subject to *de novo* review. *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20 (2011).

¶ 13     Plaintiffs first contend that the arbitration provision is unenforceable as part of BDO's conspiracy to commit fraud. Initially, we must determine whether New York law applies here, given that the arbitration clause states that a dispute "shall be settled by arbitration in accordance

with the laws of the State of New York," and the "Governing Law" paragraph states that New York law applies to the consulting agreement as a whole. Unambiguous language in the contract should be given its plain and ordinary meaning. *Buenz v. Frontline Transportation Company*, 227 Ill. 2d 302, 308 (2008). According to the plain language of the arbitration clause, New York law governs how arbitration will be conducted once a dispute proceeds to arbitration, but not whether it should be conducted in the first instance. Furthermore, although the governing law provision of the consulting agreement also states that New York law applies as a whole, New York courts have held that if the contract involves interstate commerce, federal law applies on the arbitrability issue. *Khan v. BDO Seidman, LLP*, 404 Ill. App. 3d 892, 912 (2010), citing *Cone Mills Corp. v. August F. Nielsen Company, Inc.*, 455 N.Y.S. 2d 625, 627 (1982); *Bridas S.A. Petrolera Industrial y Commercial v. International Standard Electric Corp.*, 490 N.Y.S. 2d 711, 715 (1985). Therefore, we will apply federal arbitration law in determining this issue.

¶ 14 In *H.W. Moseley v. Electronic & Missile Facilities, Inc., et al.*, 374 U.S. 167 (1963), the Supreme Court addressed whether a court can consider an allegation that an arbitration clause was fraudulently induced. The petitioner in *Moseley* brought a claim seeking, among other things, recovery for performance under two subcontracts, rescission of the subcontracts due to fraud, and an injunction to enjoin the other party from seeking arbitration pursuant to provisions in the subcontracts. *Id*. at 168. Respondent, however, moved to dismiss the suit or stay the proceedings in favor of the arbitration claim it had previously filed in the New York court pursuant to the arbitration clauses in the subcontracts. *Id*. at 170. The district court denied the motion seeking arbitration, finding that the Arbitration Act did not apply because "any other holding would nullify the provisions of the Miller Act" which provides that included parties "

'shall have the right to sue *** and to prosecute said action to final execution and judgment ***.' " *Id*. The appeals court reversed, finding that the dispute was subject to arbitration. *Id*.

¶ 15 The Supreme Court held that the claim that respondent engaged in a fraudulent scheme to " 'browbeat' " petitioner "into accepting much less than the value of their claims," and inserted the arbitration clause as one means to effect the scheme, was an issue for the courts to decide. *Id*. at 171. However, the court did not elaborate further on the issue, nor did it discuss the Arbitration Act as it relates to the issue.

¶ 16 The Supreme Court revisited the issue in *Prima Paint Corp. v. Flood & Conklin Manufacturing Company*, 388 U.S. 395 (1967). *Prima Paint* addressed whether a court or an arbitrator "is to resolve a claim of 'fraud in the inducement,' under a contract governed by the United States Arbitration Act of 1925, where there is no evidence that the contracting parties intended to withhold that issue from arbitration." *Id*. at 396-97. Petitioner Prima Paint Corporation (Prima Paint) and respondent Flood & Conklin Manufacturing Company (F & C), entered into a consulting agreement whereby F & C agreed to provide advice and consultation regarding certain aspects of the paint business. *Id*. at 397. The agreement included a broad arbitration clause which stated that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association ***." *Id.* at 398.

¶ 17 Prima Paint subsequently filed suit in federal district court, seeking rescission of the agreement on the basis of fraudulent inducement. *Id*. Prima Paint contended that F & C fraudulently represented that it was solvent when in fact it was insolvent and intended to file a petition for bankruptcy. *Id*. Prima Paint also petitioned for an order enjoining F & C from

seeking arbitration. F & C filed a cross-motion to stay the court proceedings pending arbitration. *Id*. at 399.

¶ 18 The United States Supreme Court affirmed the district court's grant of F & C's motion to stay the proceedings. *Id.* at 400. It found that the language of the Arbitration Act provides that "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id*. at 403-04. Therefore, it held that in ruling on a section 3 motion for a stay pending arbitration, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Id*. at 404. In other words, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

¶ 19 Plaintiffs' complaint alleged fraud in the making of the agreement as a whole. They alleged that BDO conspired to design, market, sell, and implement investment strategies it knew the IRS would disallow, and that BDO made misrepresentations to convince the Coes to enter into the consulting agreement and participate in BDO's distressed debt strategy. Plaintiffs question the enforceability of an agreement to arbitrate contained within a contract induced by fraud. These issues, however, are for the arbitrator to determine. *Prima Paint*, 388 U.S. at 403-04.

¶ 20 Plaintiffs argue that their complaint alleged fraud in the agreement to arbitrate because they sought a declaration that "any arbitration agreement provision contained in any of the Agreements is also null and void for the reasons set forth herein, including but not limited to the

arbitration provision was procured by fraud, was fraudulently induced, and/or the fraud permeated the entire agreement, including the arbitration provision." Although plaintiffs need not prove their fraud allegations at this point, they must allege with specificity the nature of the misrepresentation when making a claim for fraud. *United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1105-06 (7th Cir. 2014). Therefore, to merely allege that the arbitration clause was included to further a fraudulent scheme is insufficient. *Ragan v. AT&T Corporation*, 355 Ill. App. 3d 1143, 1158 (2005) (determining the issue under federal law). "[T]here must be facts alleged from which it might be concluded that the party resisting arbitration never intended to agree to arbitrate the issues raised in the proceedings or that its assent to the agreement to arbitrate was the product of wrongful coercion." *Id*.

¶ 21 In his affidavit, Douglas Coe stated that BDO represented to him that the arbitration clauses were "*bona fide* dispute resolution procedures that would benefit all parties" and "offer a legitimate, good faith alternative to resolve disputes." Coe further stated that he relied on these representations when he agreed to the arbitration provisions. Coe, however, does not argue that he never would have agreed to the arbitration provision without BDO's representations, nor is there any evidence that BDO coerced Coe into agreeing to the provisions. As such, plaintiffs' claims of fraud relating to the arbitration provisions are insufficient to enable a court to consider the issue.

¶ 22 Plaintiffs' next contention is that the trial court erred in granting the stay pending arbitration because their claims arise from defendant BDO's investment and legal advice, and such claims are expressly excluded from arbitration by the contracts signed by the parties. In making its ruling, the trial court relied heavily on *Khan*, which we also find instructive. Like

the Coes here, plaintiff Khan entered into a consulting agreement with defendant BDO to implement various investment strategies designed to produce favorable tax outcomes for the plaintiff. *Khan,* 404 Ill. App. 3d at 896-901. The consulting agreement in *Khan*, as the agreement here, required that " ' [i]f any dispute, controversy or claim arises in connection with the performance or breach of the agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration ***.' " *Id.* at 913. The court in *Khan* reasoned that the scope of this arbitration clause is "narrower" than clauses referring to claims generally arising out of or relating to the agreement, and encompassed only claims relating to the performance of the consulting agreement. *Id*. at 913-14. Therefore, to determine whether a claim falls within the narrower arbitration provision, the court must first "determine what performances BDO promised to render in the consulting agreements." *Id*. at 914.

¶ 23   Although the court addressed various services BDO provided to Khan, relevant to this appeal is its determination regarding the "legal and/or tax opinions" BDO gave its client and whether claims arising from those opinions are subject to arbitration under the agreement. Evidence established that BDO prepared tax returns and conducted investment planning in accordance with its investment strategies, and also issued an opinion letter stating legal and tax conclusions about its investment strategies. *Id*. at 905. The *Khan* court acknowledged that BDO's agreement to prepare income-tax returns and assist in income-tax planning in this manner "entails, to some extent, forming a legal opinion on the applicability of certain provisions of tax statutes ***." *Id*. at 918. However, it also recognized the provision in the consulting agreement stating that BDO's services do not include, and BDO assumes no responsibility for, " 'any legal and/or tax opinions regarding any strategies that may be implemented.' " *Id*. The

court harmonized the seemingly contradictory provisions by finding that any "legal evaluations inherent in the proposed tax returns that BDO prepares for the client are merely tentative or provisional until they are validated by a law firm. The tax returns, as drafted by BDO, are in the nature of suggestions which are subject to the review and approval of a qualified lawyer." *Id*. at 919. In other words, while BDO may have expressed legal opinions in preparing tax forms for, and conducting investment planning with, a client, the ultimate responsibility for those legal opinions rests with the client's lawyers. Therefore, the services provided by BDO that are subject to the arbitration clause do not include legal or tax opinions expressed in the preparation of tax forms or in investment planning.

¶ 24 Regarding Khan's claim that BDO conspired with the prominent law firm to issue sham legal opinions on the investment strategies, the court found that "[t]he consulting agreement expressly contemplates that a law firm, not BDO, will be responsible for formulating legal or tax opinions. By interfering with, or compromising the integrity of, this process of legal review by a third party, BDO went outside its field of activity as contemplated by the consulting agreement and, therefore, outside the scope of the arbitration clause." *Id*. Therefore, the court held that Khan's claims arising from the opinion letters issued by BDO were not subject to arbitration under the consulting agreement. *Id*.

¶ 25 The claims in plaintiffs' complaint here alleged that BDO conspired to design, market, sell, and implement investment strategies it knew the IRS would disallow. It further alleged that BDO made these representations to convince the Coes to enter into the consulting agreement and participate in BDO's distressed debt strategy. Relying on BDO's misrepresentations, the Coes executed the agreement and implemented the investment strategies. Plaintiffs requested as damages the amount of the IRS settlement plus $805,000 in fees the Coes paid to BDO

pursuant to the consulting agreement. These claims arise from representations BDO made in its opinion letter "regarding certain federal income tax consequences of the investment transactions."

¶ 26 However, unlike the situation in *Khan*, the consulting agreement here includes a provision explicitly stating that "the Services to be provided in connection with this Agreement include the issuance of an opinion regarding the federal income tax consequences of the Transactions. In this regard, BDO accepts responsibility for the opinion BDO will provide to Client." According to the plain and clear language of the consulting agreement, BDO's services "include the issuance of an opinion" and the result is the April 15, 2002, opinion letter. Therefore, plaintiffs' claims based on the opinion letter fall within the arbitration provision of the agreement.

¶ 27 Plaintiffs, however, disagree and argue that including the legal and tax advice contained in the opinion letter would render the agreement's legal and investment advice disclaimers superfluous. The consulting agreement provides that BDO's services include the issuance of an opinion letter regarding federal tax implications of the investment strategies, but it also states that BDO "does not assume any responsibility whatsoever, and shall not be held liable for, any legal and/or tax opinions regarding any strategies that may be implemented by Client during the term of this Agreement" and advised clients "to retain a law firm for legal as well as tax opinions on any strategies or Transactions in which Client engages during the term of the Agreement." These seemingly contradictory provisions can be harmonized, however, so that both are given effect. Courts should make reasonable efforts "to harmonize apparently conflicting provisions." *Khan*, 404 Ill. App. 3d at 918. Generally, if contractual provisions conflict or create an

ambiguity, the more specific provision controls. *Grevas v. United States Fidelity & Guaranty Company*, 152 Ill. 2d 407, 411 (1992).

¶ 28    Here, the provision referring to legal and tax opinions in general is subject to the same treatment the court in *Khan* gave the identical provision in their agreement: such opinions are outside the scope of the arbitration clause.    However, the consulting agreement here specifically carved out an exception to that provision in expressly stating that "the Services to be provided in connection with this Agreement include the issuance of an opinion regarding the federal income tax consequences of the Transactions.    In this regard, BDO accepts responsibility for the opinion BDO will provide to Client." In other words, although claims arising from general legal and tax opinions resulting from the implementation of the consulting agreement are excluded from arbitration, claims based on BDO's opinions regarding the federal income tax consequences of the transactions are arbitrable.    The more specific provision referring to opinions outlining federal income tax consequences therefore controls.

¶ 29    Plaintiffs argue that even if their claims fall within the scope of the agreement's arbitration clause, the clause itself is unenforceable because it is unconscionable.    See *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) ("[a]n agreement is unenforceable when it is unconscionable.")    Given the choice of law provision in the agreement, we determine the enforceability of an arbitration provision under the Arbitration Act as applied by New York law.    *Roubik v. Merrill Lynch, Pierce, Fenner & Smith*, 181 Ill. 2d 373, 378 (1998).    Plaintiffs contend that the arbitration provision is both procedurally and substantively unconscionable.

¶ 30    Before addressing the merits of the issue, we note plaintiffs' contention that the trial court committed reversible error when it failed to expressly address their unconscionability arguments.

The trial court held a hearing and orally ruled from the bench after the parties presented their arguments. When plaintiffs' attorney addressed the court, he stated that "[u]nless your Honor has questions about unconscionability, I'd like to stand on the briefing for that issue and really just address the two fraud arguments." No one objected and when the trial court did not issue an oral ruling on unconscionability, plaintiffs' attorney did not request one. Under the invited error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). However, even on the merits plaintiffs do not prevail.

¶ 31 Procedural unconscionability addresses issues in contract formation such as whether one party lacked any meaningful choice in entering the contract, taking into account the party's experience and education, whether the contract contained "fine print," and whether high-pressure tactics were used. *Brower v. Gateway 2000, Inc.*, 676 N.Y.S. 2d 569, 573 (N.Y. Sup. Ct. 1998). Plaintiffs argue that the arbitration provision is procedurally unconscionable because there was a disparity in bargaining power between the parties, plaintiffs had no knowledge that the investment strategies BDO would utilize under the agreement were fraudulent, and BDO failed to explain that they would be giving up or limiting their rights to a jury trial, discovery, punitive damages and appeal, should a controversy arise. Plaintiff Coe is a sophisticated and successful business person who sought the services of BDO. The arbitration provision was plainly visible in the agreement, and the meaning of its terms was clear. There is no evidence that BDO forced Coe to enter into an agreement for services, and Coe was free to seek the services of another company if he did not like the terms of BDO's services. See *Ranieri v. Bell Atlantic Mobile*, 759 N.Y.S. 2d 448 (2003) (inequality of bargaining power does not invalidate a contract as unconscionable if the complaining party could have made its purchase elsewhere).

¶ 32    Plaintiffs argue that "[n]o amount of education or business acumen could have protected the Coes from the undisclosed criminal conduct of BDO and the lengths it was willing to go to cover up its activity." As discussed above, courts can only address the issue of whether the arbitration clause itself was fraudulently induced.   The question of whether fraud permeated the entire contract, including the arbitration clause, is one for the arbitrator.   *Prima Paint*, 388 U.S. at 403-04.

¶ 33    An arbitration provision is substantively unconscionable "where its terms are unreasonably favorable to the party against whom unconscionability is claimed."   *Brennan*, 198 F. Supp. 2d at 382.   Such terms must be "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."   *Gillman v. Chase Manhattan Bank*, 73 N.Y. 2d 1, 10 (N.Y. 1988).   Plaintiffs contend that the arbitration provision is substantively unconscionable because its prohibition on pre-hearing discovery heavily favors BDO and serves only to further BDO's fraudulent scheme, and its limitations on damages is unfair and one-sided.   Plaintiffs do not cite authority for their argument in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), and have thereby forfeited this issue on appeal.

¶ 34    In any event, New York courts have rejected the contention that such a discovery limitation renders the provision unconscionable.   See *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) ("[t]he suggestion that an arbitration clause is unconscionable because discovery either is unavailable or more limited in arbitration than in litigation is preposterous").   There is also no indication that the limitations on damages provision was "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time" or not bargained for by the parties.   Furthermore, under New York law

arbitration clauses need not reflect "mutual promises creating identical rights and obligations in each party" to be enforceable. *Sablosky v. Edward S. Gordon Company*, 73 N.Y. 2d 133, 136 (N.Y. 1989). Instead, whether consideration exists for the entire agreement is the determining factor. "If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement." *Id*.

¶ 35    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.