2022 IL App (1st) 201181-U

No. 1-20-1181

Second Division
March 8, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| UNITED METHODIST HOMES & SERVICES, | ) ) ) ) Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) |
| v. | ) No. 19 CH 15107 ) |
| SYMBRIA, INC., | ) Honorable ) Anna H. Demacopoulos |
| Defendant-Appellant. | ) Judge, presiding. |
| (and, as necessary parties only, CENTRAL BAPTIST VILLAGE; COVENANT RETIREMENT COMMUNITIES, INC.; FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION; EMBRACE LIVING COMMUNITIES f/k/a LIFELINK CORPORATION; LUTHERAN HOME AND SERVICES FOR THE AGED, INC.; MATHER LIFEWAYS; NORWEGIAN LUTHERAN BETHESDA HOME ASSOCIATION; NORWOOD LIFE CARE FOUNDATION; FRIENDSHIP SENIOR OPTIONS, NFP; REST HAVEN ILLIANA CHRISTIAN CONVALESCENT HOME; ST. PAULS HOUSE & HEATLH CARE CENTER; JILL KRUEGER, an individual; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 1-20-1181

THOMAS NOESEN, an individual; and
JOHN CALLEN, an individual,                )
Defendants.)                               )

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's grant of summary judgment for plaintiff is reversed where the plain language of the parties' contract did not support a reading that two non-solicitation provisions were geographically limited to the state of Illinois.

¶ 2    This appeal arises from a declaratory judgment action asking the circuit court to determine the geographic scope of two non-solicitation provisions in a written Stock Purchase Agreement (SPA) between the seller, plaintiff-appellee United Methodist Homes and Services (UMHS), and the buyer, defendant-appellant Symbria, Inc. (Symbria). The circuit court entered summary judgment for UMHS, ruling that the provisions in question only prohibited the solicitation of potential employees and clients within Illinois. Symbria now appeals, and we reverse for the reasons that follow.

¶ 3                                   I. BACKGROUND

¶ 4    Symbria is an Illinois-based company that provides patients with physical, occupational, and speech therapies. Symbria conducts business through its subsidiaries located in Illinois and several other states, including Arizona, Connecticut, Missouri, Ohio, and Pennsylvania. Prior to October 2015, Symbria was owned by a group of shareholders that included companies in the business of operating senior living facilities. UMHS was one such shareholder.

¶ 5    On October 31, 2015, UMHS and the other Symbria shareholders entered into an SPA to sell the entirety of Symbria's outstanding shares to Symbria's employees via an employee stock

ownership plan (ESOP). Relevant to this appeal is section 5.4 of the SPA, which contains restrictive covenants that were to remain in effect during a "Noncompetition Period" beginning on the closing date and extending for at least five years or until the respective seller's subordinate note was paid in full.

¶ 6     The first restrictive covenant is a non-competition provision found in Section 5.4(a). That section provides in pertinent part that during the Noncompetition Period, each seller

"shall not engage in *** any business anywhere in the state of Illinois which is engaged, either directly or indirectly, in the business of developing, marketing, providing, representing, or selling any products or services which are competitive with products or services developed, marketed, provided, sold or under development by, any member of [Symbria] or its Affiliates as of the Closing Date (the 'Restricted Business')."

¶ 7     The covenants that are the subject of this appeal are two non-solicitation provisions found in sections 5.4(b) and (c), respectively. Section 5.4(b) provides that each seller:

"severally covenants that, during the Noncompetition Period, he, she or it shall not solicit or entice, or attempt to solicit or entice, any clients or customers of [Symbria] or potential clients or customers of [Symbria] for purposes of diverting their business or services from [Symbria]."

Similarly, section 5.4(c) provides that each seller

"severally covenants that, during the Noncompetition Period, he, she or it shall not solicit the employment or engagement of services of any person who is or was employed as an employee, contractor or consultant by [Symbria] during such period on a full- or part-time basis."

¶ 8 Also important to this appeal is a second sentence of section 5.4(a) of the non-competition provision, which contains language not mirrored in the other subsections. Specifically, the second sentence of section 5.4(a) provides:

"It is recognized that the Restricted Business is expected to be conducted throughout the state of Illinois and that more narrow geographic limitations of any nature on this non-competition covenant (and the non-solicitation covenants set forth in Sections 5.4(b) and 5.4(c) are therefore not appropriate."

¶ 9 Within the Noncompetition Period, on December 6, 2019, Symbria sent a letter to UMHS, seeking a set-off for damages caused by UMHS's alleged violations of the restrictive covenants. In particular, Symbria asserted that UMHS violated section 5.4(a) by competing within Illinois and also sections 5.4(b) and (c) for soliciting clients and employees both inside and outside Illinois.

¶ 10 After receiving the letter, on December 31, 2019, UMHS filed a declaratory action "as to whether the SPA's non-solicitation provisions in Section 5.4(b) and (c) are restricted to Illinois or do not have a geographic limitation." The parties filed cross-motions for summary judgment, each arguing that the SPA was unambiguous in their favor and agreeing that the issue could be decided on the pleadings. In its motion, UMHS contended that the second sentence of section 5.4(a) limited the geographic scope of all three restrictive covenants to Illinois, and that any other interpretation would render the parenthetical portion of section 5.4(a) superfluous and the non-solicitation provisions unreasonable. Symbria, on the other hand, maintained that the second sentence of section 5.4(a) did not limit the scope of the non-solicitation provisions, but merely acknowledged the parties' agreement that restrictions narrower than the entire state of Illinois were insufficient.

¶ 11    After a hearing on the parties' cross-motions, the circuit court opined that Symbria's interpretation of the restrictive covenants would require the court to "ignore the plain language of [section] 5.4(a) imposing geographical limitations" and "completely disregard the parenthetical information" referencing the non-solicitation provisions. Accordingly, the court denied Symbria's motion for summary judgment and instead entered summary judgment in favor of UMHS

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    As this case comes to us from a grant of summary judgment, we set forth the familiar standards governing summary judgment. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). We review a trial court's grant of summary judgment *de novo*, meaning we perform the same analysis that a trial judge would and give no deference to the trial judge's conclusions or specific rationale. *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 26.

¶ 15    The issue on appeal is whether the non-solicitation provisions in sections 5.4(b) and (c) of the SPA are limited to the state of Illinois. In interpreting a contract, our primary objective is to determine and give effect to the intention of the parties at the time they entered into the agreement. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). To do so, we must look to the language of the contract itself, giving its terms their plain and ordinary meanings. *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 71. We must also examine the contract as a whole and, where possible,

avoid construing it in a way that nullifies or renders any provision meaningless. *Thompson*, 241 Ill. 2d at 442. Where the language of a contract is clear and unambiguous, a court need not resort to evidence outside the four corners of the contract itself. *Lyman*, 2015 IL App (1st) 132832, ¶ 71.

¶ 16    With these principles in mind, we first note that, unlike the non-competition provision, the non-solicitation provisions themselves do not contain any geographic limitations. The case thus turns on section 5.4(a)'s parenthetical reference to the non-solicitation provisions. Specifically, the second sentence of section 5.4(a) provides:

> "It is recognized that the Restricted Business is expected to be conducted throughout the state of Illinois and that more narrow geographical limitations of any nature on this non-competition covenant (and the non-solicitation covenants set forth in Sections 5.4(b) and 5.4(c)) are therefore not appropriate."

¶ 17    As it did in the court below, UMHS argues that this sentence means that the same Illinois-wide geographic limitation applies to both the non-competition provision and the non-solicitation provisions. However, we cannot read the second sentence of section 5.4(a) to limit the geographic scope of the covenants referenced therein. To the contrary, the plain language of the sentence merely states that a scope narrower than the state of Illinois would not be appropriate because the parties recognized that Symbria would do business throughout the entire state. In our view, nothing in the language necessitates or implies that a broader geographic scope should not apply to the non-solicitation provisions.

¶ 18    Still, UMHS argues that the sentence implies only a state-wide scope for the non-solicitation provisions because the parenthetical portion would otherwise be rendered meaningless. We disagree. As UMHS itself explains in its brief on appeal, the second sentence of section 5.4(a) is a standard provision designed to "provide the party seeking to enforce a covenant with evidence

to support an argument that [the] scope of the restriction is reasonable and the covenant is thus valid." Under our interpretation, the parenthetical portion still serves as evidence that the non-solicitation provisions should be extended to at least the entire state of Illinois if, for instance, a court were to find that unlimited non-solicitation provisions were unreasonable in this case.

¶ 19    Our interpretation is also supported by a reading of the SPA as a whole. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 223 (2007) (contracts must be interpreted as a whole). For example, the first sentence of section 5.4(a) expressly provides that the non-competition provision is limited to the state of Illinois. In contrast, the non-solicitation provisions in sections 5.4(b) and 5.4(c) contain no such language. It is a well-established cannon of contract interpretation that the use of different language to address parallel issues gives rise to the inference that the parties intended to mean different things. *Lobo IV, LLC* v. *V Land Chicago Canal, LLC*, 2019 IL App (1st) 170955, ¶ 81. Thus, the difference in language between section 5.4(a) and sections 5.4(b) and (c) suggest that the parties intended the non-solicitation provisions to have a different geographic scope than the non-competition provision. Had the parties intended otherwise, it is logical to assume that they would have used the same language in all three restrictive covenants.

¶ 20    We also find significant the fact that section 5.4 was negotiated to extend to Symbria's various subsidiaries, some of which operate outside of Illinois. The SPA itself defines the subsidiaries to which the restrictive covenants apply as "all direct and indirect subsidiaries" of Symbria, specifically listing several entities not only in Illinois but also Arizona, Connecticut, Missouri, Ohio, and Pennsylvania. Thus, the record shows that the parties were aware that the restrictive covenants were meant to protect entities outside of Illinois.

¶ 21    In keeping with this understanding, we also note that the SPA contemplates potential challenges to the restrictive covenants in multiple jurisdictions. Section 5.4(f) of the SPA provides in relevant part:

> "The covenants contained in this Section 5.4 and each provision thereof are severable and distinct covenants and provisions. The invalidity or unenforceability of any such covenant or provision as written shall not invalidate or render unenforceable the remaining covenants or provisions hereof, *and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such covenant or provision in any other jurisdiction* (emphasis added)."

Had the parties intended for the restrictive covenants to apply only in Illinois, there would be no reason to include this reference to enforceability in other jurisdictions, so such an interpretation would render this portion of section 5.4(f) meaningless.

¶ 22    UMHS responds to this point with two arguments, neither of which we find persuasive. First, UMHS contends that section 5.4(f) is a "general, boilerplate provision" that should not control over the more specific language in section 5.4(a). This argument reflects the maxim that "[g]enerally, if contractual provisions conflict or create an ambiguity, the more specific provision controls." *Coe v. BDO Seidman, L.L.P.*, 2015 IL App (1st) 142215, ¶ 28. However, this maxim is not applicable here because, as we have previously explained, section 5.4(a) does not limit the non-solicitation provisions to Illinois. Thus, under our interpretation, sections 5.4(a) and 5.4(f) are not in conflict, but in harmony. See *id.* (courts should make reasonable efforts to harmonize seemingly conflicting provisions).

¶ 23    Second, UMHS argues that section 5.4(f) does not imply an unlimited scope to the non-solicitation provisions because "jurisdiction" is not necessarily synonymous with "state." For

example, UMHS posits a scenario where a federal court, applying Illinois law and addressing an issue not fully resolved by our supreme court, would reach a different conclusion than this court might on the enforceability of a restrictive covenant. We reject this strained interpretation of section 5.4(f). A court interpreting a contract should give the terms their most natural and ordinary meaning and should avoid straining to find an ambiguity where none exists. *Guadina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264. It is clear in context that the most natural meaning of the term "jurisdiction" in section 5.4(f) is synonymous with "state" such that if one of the restrictive covenants is deemed unenforceable under the laws of one state, it does not necessarily mean the covenant is unenforceable under the laws of another state.

¶ 24    Lastly, UMHS argues that Symbria's interpretation of the SPA should be rejected because it would render the non-solicitation provisions unreasonable. We express no opinion on the ultimate reasonableness of the non-solicitation provisions under any interpretation, a matter which (as UMHS acknowledges) was not before the circuit court and is therefore outside the ambit of this appeal. However, even assuming, *arguendo*, that geographically unlimited non-solicitation provisions would be unenforceable in this case, this does not change the plain language of the contract. "When the contractual language is clear, the court must determine the parties' intent solely from the plain language of the contract." *Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurace, Inc.*, 2016 IL App (1st) 161612, ¶ 30. Of course, parties can and sometimes do intend to include restrictive covenants that are ultimately deemed unenforceable. See, *e.g.*, *AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, ¶ 41 (non-solicitation provision unreasonable). Indeed, the parties in this case expressly contemplated a scenario in which one or more of the restrictive covenants were "adjudicated to exceed the time, geographic, product or service, or other limitations permitted by applicable Laws in any jurisdiction[.]" In such an

instance, section 5.4(f) of the SPA provides that a court may reform the covenant "in such jurisdiction to the maximum time, geographic, product or service, or other limitations permitted by applicable Laws." Thus, we find UMHS's argument unconvincing.

¶ 25                                    III. CONCLUSION

¶ 26     Because we find that the plain language of the SPA provides no geographic limitations to the non-solicitation provisions in sections 5.4(b) and (c), we conclude that the circuit court erred in granting summary judgement to UMHS. Accordingly, we reverse the judgment of the circuit court and remand the matter for further proceedings not inconsistent with this order.

¶ 27     Reversed and remanded.