NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240849-U

NO. 4-24-0849

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* | ) | Appeal from the |
| | ) | Circuit Court of |
| TERESA M., | ) | Brown County |
|     Petitioner-Appellee, | ) | No. 22FA7 |
|     and | ) | |
| EMILY M., | ) | Honorable |
|     Respondent-Appellant. | ) | Jerry J. Hooker, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the circuit court did not err when it entered an order restricting respondent's parenting time.

¶ 2    Respondent, Emily M., appeals the circuit court's May 10, 2024, order denying her motion to modify restrictions to her parenting time of L.M. (born July 2017). On appeal, Emily argues the court erred when it (1) exercised jurisdiction over a person who was not a party to the matter and (2) failed to comply with the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/101 *et seq.* (West 2022). We affirm.

¶ 3                                   I. BACKGROUND

¶ 4    We start by noting there appears to be a prior legal dispute between the parties in Adams County. However, the record on appeal does not include any Adams County records.

What little can be discerned about prior Adams County proceedings is only that which is indicated in the Brown County court records.

¶ 5　　　　On May 12, 2022, petitioner, Teresa M.—Emily's mother and L.M.'s grandmother—filed a petition for allocation of temporary and permanent parental responsibility and parenting time in Adams County case No. 22-FA-61. The petition alleged, *inter alia*, Emily's live-in boyfriend, Dennis S., had sexually abused L.M. On May 20, 2022, the Adams County circuit court entered an agreed order in which Emily was awarded the majority of parenting time for L.M. A parenting time schedule also awarded Teresa with nonparental visitation of L.M. Aaron L.—who is L.M.'s biological father and not a party to this appeal—consented to the agreed order. The order noted Aaron had no decision-making responsibility or parenting time with L.M. The order prohibited Teresa from filing any actions regarding custody of L.M. without first seeking leave from the Adams County court. The order also prohibited Dennis from having any "unsupervised contact" with L.M.

¶ 6　　　　The circuit court entered an order in this case dated August 26, 2022, which indicated the matter had been transferred from Adams County and was combined with two order-of-protection cases filed in Brown County by Teresa against Emily (Brown County case No. 22-OP-22) and Dennis (Brown County case No. 22-OP-21). An order from August 30, 2022, showed the emergency orders of protection entered against Emily and Dennis were modified by agreement among the parties to allow Emily unsupervised parenting time consistent with the Adams County agreed order. Dennis was ordered to have no contact with L.M. The court appointed a guardian *ad litem* (GAL) for L.M. The same order from August 30, captioned with Brown County case Nos. 22-OP-21 and 22-FA-7, indicated Dennis was served with a summons.

¶ 7 On November 4, 2022, the circuit court conducted a combined hearing on the two order-of-protection cases and the case *sub judice*—the case described by the court as one "transferred to Brown County from Adams County after an agreed order was done there." Ultimately, the court dismissed both orders of protection when the GAL indicated it would recommend the "family case" include conditions protecting L.M. Counsel for Dennis advised the court Dennis would "relinquish the opportunity to be around this child," noting, in his opinion, the court had no authority "to bar him from being around [L.M.]" The court stated it believed it *did* have the authority to enter a protective order based on the GAL report.

¶ 8 The GAL's interim report, filed November 4, 2022, noted the Illinois Department of Children and Family Services (DCFS) had indicated Dennis had sexually penetrated L.M., but the allegations against Emily were unfounded. According to the report, the GAL had spoken with Dennis's adult daughter, Amber S., who had previously informed the GAL that Dennis was possibly abusive. However, when the GAL spoke with Amber by telephone prior to the November 2022 hearing, Amber, who was with her attorney, who also happened to be Dennis's attorney, stated she had misinterpreted her father's previous conduct. She "did not see a problem with Dennis having contact with [L.M.]"

¶ 9 The report also indicated the GAL had spoken with Elizabeth M., whose mother was in a relationship with Dennis from "approximately 2009-2011." Elizabeth stated Dennis was "extremely abusive toward her mother, with alcohol fueling fights between the two." Elizabeth stated she was never sexually assaulted by Dennis as a teenager but described his conduct as "creepy." She believed he had secretly recorded her in her bedroom. The report indicated the GAL had also spoken with Katelynn W. whose mother also dated Dennis. Dennis sexually assaulted Katelynn when she was between the ages of 15 and 17. She reported that at age 17, she

moved out. Katelynn's mother, Debbie W., corroborated parts of Katelynn's story. The GAL reported there was no reason to conclude these women conspired to allege baseless allegations against Dennis. Additionally, the report indicated DCFS and the Child Advocacy Center found L.M.'s statements credible regarding Dennis's conduct. The GAL recommended Dennis have no contact with L.M.

¶ 10 At the hearing, the following exchange occurred between the circuit court and counsel for Dennis:

"MR. SCHOLZ [(DENNIS'S ATTORNEY)]: Well, as I informed Court and counsel, [Dennis] is voluntarily—well, and I won't say voluntarily, but he's relinquishing the opportunity to be around [L.M.] because she's—he's afraid of what further baseless untrue lies could be told about him. So that's his position.

I don't think the Court has authority under either two cases, the OP having been dismissed. I don't think the Court has authority nor does the Court have any substantial evidence to—to bar him from being around [L.M.], but I understand that that's not going to happen. I don't think that order—but I—the Court doesn't have that authority.

But [Dennis], again, is going to relinquish the opportunity to be around this child. So I—I don't know that—it's, I think, moot. I don't know that the court has—has to enter that order.

And I think, two, if the Court entertains entering that order, I'm—I'm not sure what the authority is, and I'd certainly like to see evidence of it—or a basis for it.

THE COURT: All right. Well, the—I think the Court does have the authority in the family case to enter a protective order, and it's based on a [GAL] report, which the Court is allowed to—to consider the evidence that [the GAL] collected. And I think based on that, at least in the interim, I think in the best interest of [L.M.], it is.

I understand your concern with that. I understand [Dennis's] past disagreement with that, but I think in the interim, until I get the family case heard, I am going to enter that protective order that [Dennis] cannot have contact with [L.M.]

So [Emily], it's not affecting your—your rights. The family case, which was agreed to in Adams County, at this point is still in place with that visitation schedule. You just simply—[Dennis] can't be around [L.M.] when you have her.

Do you understand that?

[EMILY]: Yes."

¶ 11 The circuit court entered an order dismissing the orders of protection with prejudice on Teresa's motion. The issue of sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) brought by Emily against Teresa was reserved. The court ordered Teresa to "not conduct surveillance" on Dennis or Emily, and "not make significant decisions concerning [L.M.] and to strictly comply with the Agreed Order in 22FA61." The court reiterated the original Adams County agreed order from May 2022 was still in effect. Dennis was ordered not to have contact with L.M.

¶ 12 On November 15, 2022, Emily filed an emergency petition seeking to terminate Teresa's parenting time and pursue sanctions. The petition alleged Teresa had been surveilling

Emily in direct violation of the circuit court's orders. A subsequent amended petition alleged Teresa's surveillance was captured on video from cameras in Emily's vehicle, and that "third parties" had indicated Teresa had made threats against Emily's and Dennis's life "should they proceed with litigation in this matter."

¶ 13        Following a hearing on Emily's petition on January 6, 2023, the circuit court found Teresa had violated the court's order by surveilling Emily. The court denied Emily's request to terminate Teresa's parenting time but did award reasonable attorney fees for the cost of bringing the petition.

¶ 14        On February 3, 2023, Emily filed an emergency *ex parte* petition to suspend or modify Teresa's parenting time. The petition alleged L.M. had been receiving counseling from Kristal Perry-Gutierrez, a licensed counselor, who reported L.M. had stated Teresa wanted Emily "to die." A supporting affidavit by Perry-Gutierrez stated (1) L.M. denied being sexually assaulted by Dennis, (2) L.M. was fearful of Teresa, who had told her not to say anything to Perry-Gutierrez, and (3) Perry-Gutierrez was reluctant to inform DCFS out of fear Teresa would retaliate against L.M.

¶ 15        On February 7, 2023, the circuit court found good cause to enter an order granting Emily's emergency petition and suspending Teresa's parenting time until further order of the court. Following a phone conference with the parties on February 8, 2023, the court entered an order granting Teresa electronic communication every evening and supervised visits with L.M.

¶ 16        A full hearing with all parties was held on Emily's emergency petition. A transcript of this hearing is not a part of the record. A handwritten order from the circuit court from March 1, 2023, showed the court denied Emily's emergency petition, finding Teresa's

parenting time should not be suspended. The GAL was ordered to find alternative counseling services for L.M.

¶ 17　　　　On December 15, 2023, Emily filed a motion to modify the November 4, 2022, order restricting her parenting time. The motion notes the following. On November 4 the orders of protection against Emily and Dennis were dismissed with prejudice on Teresa's motion. On January 24, 2023, DCFS concluded allegations against Dennis were "founded." Dennis appealed the DCFS findings. On October 17, 2023, DCFS entered a dismissal order, stating, "[DCFS] has voluntarily unfounded the report, therefore [Dennis's] name will be removed from the State Central Register." In September 2023, new allegations were raised, and a fourth Child Advocacy Center interview was conducted. On October 26, 2023, DCFS concluded the allegations against Dennis were unfounded. The circuit court never entered a finding of serious endangerment of L.M. by Emily.

¶ 18　　　　On April 16, 2024, the GAL submitted her fourth interim report. The GAL's report recalled an incident from September 2023 wherein L.M. reported to her school she did not want to go to Teresa's home because "[g]randma makes her lie." Furthermore, according to the report, L.M. reported "[d]addy" had been staying at her home with Emily. L.M. did not state who "daddy" was, but stated he had "three boys." The GAL noted Dennis has three adult male children. The school contacted the "DCFS Hotline," but was told the "situation was not Hotline-worthy." The GAL contacted the DCFS hotline, which prompted DCFS involvement. DCFS reported to the GAL that L.M. had "recanted" her statement about "daddy" staying at Emily's home while L.M. was there, and the Brown County Sheriff's Office did not find Dennis at Emily's home.

¶ 19    The interim report recited a previous GAL report wherein the GAL expressed concern about Perry-Gutierrez's counseling of L.M. Specifically, the GAL expressed concern L.M. may still be visiting Perry-Gutierrez despite a court order for a different counselor. The GAL noted Perry-Gutierrez may have spoken directly with Dennis, and payments to Perry-Gutierrez for her services came from an account owned by Dennis.

¶ 20    The report concluded that "an emergency exist[ed]" and L.M. should be placed with Teresa to prevent "further psychological damage to [L.M.]" The GAL's report noted Teresa had demonstrated previous conduct not in L.M.'s best interest but found it imperative L.M. be placed with Teresa pending a future Child Advocacy Center interview where L.M. could "collect[ ] her thoughts without agenda."

¶ 21    On April 22, 2024, a hearing on Emily's motion was held. Emily argued the circuit court lacked subject matter jurisdiction to prohibit Dennis from having contact with L.M. after the order of protection against Dennis was dismissed with prejudice. Emily then argued there were no allegations that Emily posed a serious danger to L.M. so as to place restrictions on her parenting time that would justify prohibiting Dennis from having contact with L.M. Teresa argued first that Dennis was a party to the matter when he appeared on November 4, 2022, with counsel. Secondly, the November 4 order was an *agreed* order to dismiss the orders of protection Teresa had filed. The GAL argued the order prohibited Emily from permitting Dennis to spend time with L.M.

¶ 22    Following a hearing, the circuit court entered an order on May 10, 2024, finding the November 4, 2022, order was reached by an agreement of the parties. The court stated it "mistakenly said the standard was 'best interest' instead of 'substantial danger.' " The court denied Emily's motion.

¶ 23        This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25        We begin by noting Teresa did not file a brief in this matter. In *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009), this court explained a reviewing court may exercise three discretionary options in the absence of an appellee's brief:

> "(1) [a reviewing court] may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the [circuit] court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 26        Emily argues the circuit court erred when it (1) exercised jurisdiction and refused to dissolve the injunction placed on Dennis, who was not a party to the matter and (2) refused to dissolve the injunction placed on Emily when it did not comply with section 603.10 of the Act (750 ILCS 5/603.10 (West 2022)) by applying the incorrect legal standard and failing to make the necessary findings required by the statute. We address each claim in turn.

¶ 27        For an interlocutory appeal pursuant to Rule 307(a)(1) (See Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017)), the standard of review is generally whether the circuit court abused its discretion. *Coe v. BDO Seidman, L.L.P.*, 2015 IL App (1st) 142215, ¶ 12. "However, if the question presented is purely one of law, a reviewing court will apply the *de novo* standard." *Id.* "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or

fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 28 Emily's first argument is that Dennis was never properly summonsed in the matter, so the circuit court could not "exact jurisdiction" over him. When the court dismissed the order of protection against him, the court no longer had jurisdiction to order injunctive relief against him because he was no longer a party to the matter. Emily cites our supreme court, which stated, "A judgment rendered without service of process, either by summons or by publication and mailing, where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings." *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986).

¶ 29 Emily argues we should review this matter *de novo* because it requires an interpretation of the Act. We agree. "The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature." *People v. Clark*, 2019 IL 122891, ¶ 18. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 20. Accordingly, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Id.*

¶ 30 The record shows the case *instanter* was called simultaneously with the order-of-protection cases on November 4, 2022. The record shows Dennis was served with a summons in his order of protection case, and he appeared with counsel when the matter was resolved on November 4. The circuit court explicitly stated Dennis was not to be around L.M. during Emily's parenting time. The Act specifically authorizes the court to enter an order "restricting the presence of specific persons while a parent is exercising parenting time with the child." 750

ILCS 5/603.10(a)(6) (West 2022). The plain language of the statute authorized the court to limit Dennis's presence when Emily exercised her parenting time with L.M. Accordingly, Emily has not shown the court erred when it exercised jurisdiction over Dennis.

¶ 31 Emily's remaining arguments pertain to the application of section 603.10 of the Act. Section 603.10(a) specifically requires the circuit court, if it finds, following a hearing, "by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." 750 ILCS 5/603.10(a) (West 2022).

¶ 32 Emily contends the circuit court did not apply the proper standard of serious endangerment, and it subsequently failed to make the requisite factual finding to support its imposed parenting restriction on Emily. The court noted in its order from May 10, 2024, it incorrectly stated " 'best interest' " when it meant " 'substantial danger.' "

¶ 33 As a reviewing court, we presume the circuit court knows the law and applies it properly. *People v. Howery*, 178 Ill. 2d 1, 32 (1997). "That presumption, however, may be rebutted when the record contains strong affirmative evidence to the contrary." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 28.

¶ 34 Here, the circuit court explicitly stated it premised its restriction on Emily's parenting time, that Dennis be prohibited from interacting with L.M., on the GAL's report. The report showed a fact investigation done by the GAL corroborating concerns about L.M.'s safety around Dennis. At the time, there had been a finding by DCFS that corroborated such concerns as well. The Act specifically permits the GAL's written report and recommendation "be admitted into evidence without the need for foundation." 750 ILCS 5/506(2) (West 2022).

¶ 35    While the circuit court used the wrong language, the effect of its decision was a determination that Emily's parenting time be restricted based on L.M.'s safety. This was not a best interest finding, but a serious endangerment finding based on the GAL's report. Emily did not challenge this evidence and did not cross-examine the GAL, which would have been permitted by statute.

¶ 36    We are aware DCFS voluntarily withdrew its finding against Dennis in October 2023. However, the basis of that withdrawal is unclear from the record. The record shows allegations against Dennis were determined by DCFS to be founded in both January 2023 and November 2022. We note it is the appellant's burden to present a sufficiently complete record of the proceedings to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. The record shows DCFS voluntarily unfounded a report in October 2023 following an appeal by Dennis. We can only presume the unfounded report was the DCFS report from January 2023. There is no indication from this record the November 2022 report by DCFS was also unfounded.

¶ 37    Ultimately, Emily is challenging the circuit court's findings from November 4, 2022. The record does not support her claims on appeal. Accordingly, we find the court did not abuse its discretion when it imposed parenting restrictions on Emily that prohibited Dennis from having contact with L.M.

¶ 38                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the circuit court's judgment.

¶ 40    Affirmed.